**KANTROWITZ GOLDHAMER & GRAIFMAN PC**
Gary Graifman, *admitted pro hac vice*
Melissa Emert, *admitted pro hac vice*
135 Chestnut Ridge Road, Suite 200
Montvale, NJ 07645
Tel: (845) 356-2570
ggraifman@kgglaw.com
memert@kgglaw.com

**MIGLIACCIO & RATHOD LLP**
Nicholas Migliaccio, *admitted pro hac vice*
Jason Rathod, *admitted hac vice*
412 H St NE #302
Washington, D.C. 20002
Tel: (202) 470-3520
nmigliaccio@classlawdc.com
jrathod@classlawdc.com

**FEDERMAN & SHERWOOD**
William B. Federman, *admitted pro hac vice*
10205 N. Pennsylvania Avenue
Oklahoma City, OK 73120
Tel: (405) 235-1560
wbf@federmanlaw.com

*Proposed Class Counsel*
*Additional Proposed Class*
*Counsel on Signature Page*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE SALINAS, RAYMEL WASHINGTON, and AMANDA GORDON, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> BLOCK, INC. and CASH APP INVESTING, LLC, <br><br> Defendants. | Case No. 3:22-cv-04823 <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR APPROVAL OF CLASS SETTLEMENT, PROVISIONAL CERTIFICATION OF NATIONWIDE SETTLEMENT CLASS, AND APPROVAL OF PROCEDURE FOR AND FORM OF NOTICE TO SETTLEMENT CLASS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |

1

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on **April 25, 2024** at **2:00 p.m**. or as soon thereafter as the matter may be heard by the Honorable Judge Araceli Martinez-Olguin of the United States District Court for the Northern District of California, San Francisco Division, located in Courtroom 10 at 450 Golden Gate Avenue, San Francisco, California, 94102, Plaintiffs Michelle Salinas, Raymel Washington, and Amanda Gordon, by their undersigned counsel of record, will and hereby do move for entry of an order:

(1) approving, for settlement purposes only, the certification of a Settlement Class defined as "All persons who are current or former customers of Defendants or any of Defendants' affiliates, parents, or subsidiaries and who had their Personal Information, Cash App account, or Cash App Investing account accessed or obtained without their authorization or who otherwise had unauthorized, unintended, or fraudulent withdrawals or transfers to or from, or alleged error in connection with, a Cash App or Cash App Investing account or any linked financial account in the period of four (4) years prior to the filing of the Salinas Complaint (which was filed on August 23, 2022) through the Notice Date."

(2) directing the dissemination of Class Notice in the form and manner set forth in the Class Action settlement Agreement dated February 16, 2024 ("Settlement or Settlement Agreement"); and

(3) setting a date for a Final Approval Hearing.

A copy of Plaintiffs' unopposed [Proposed] Order Granting Preliminary Approval of Class Action Settlement is submitted herewith.

**PLEASE ALSO TAKE NOTICE** that, after expiration of the time for Class Members to opt out or object, and upon the occurrence of the Final Approval Hearing, Plaintiffs will seek entry of a further order:

(1) granting final approval to the Settlement and entering judgment thereon;

(2) awarding a Service Award in the amount of $2,500 for each Class Representative; and

(3) awarding Attorneys' Fees and Expenses to Plaintiffs' Counsel in the amount of twenty-five percent of the total Settlement Amount.

This Motion is based on Federal Rule of Civil Procedure 23, this Notice of Motion, the supporting Memorandum of Points and Authorities, the Emert Declaration, and the pleadings and papers on file in this action, and any other matter of which this Court may take judicial notice.

Dated: March 3, 2024                                Respectfully submitted,

/s/   *Melissa R. Emert*
Melissa R. Emert (admitted *pro hac vice*)
Gary Graifman (admitted *pro hac vice*)
**KANTROWITZ, GOLDHAMER**
**& GRAIFMAN, P.C.**
135 Chestnut Ridge Road, Suite 200
Montvale, NJ 07645
Tel: (845) 356-2570

Nicholas A. Migliaccio (admitted *pro hac vice*)
Jason S. Rathod (admitted *pro hac vice*)
**MIGLIACCIO & RATHOD LLP**
412 H St NE, Suite 302
Washington DC 20002
Telephone (202) 470-3520
nmigliaccio@classlawdc.com
jrathod@classlawdc.com

William B. Federman (admitted *pro hac vice*)
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
Ph: 405-235-1560

Daniel E. Gustafson (admitted *pro hac vice*)
David A. Goodwin (admitted *pro hac vice*)
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Tel: (612) 333-8844
dgustafson@gustafsongluek.com
dgoodwin@gustafsongluek.com

Scott. D Hirsch (admitted *pro hac vice*)
**SCOTT HIRSCH LAW GROUP**
6810 N. State Road 7
Coconut Creek, FL 33073
(561) 569-7062
scott@scotthirschlawgroup.com

***Proposed Class Counsel***

3

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................. i

I.   INTRODUCTION ....................................................................................................... 1

II.  PROCEDURAL BACKGROUND ............................................................................ 2

III. TERMS OF THE PROPOSED SETTLEMENT ...................................................... 3

   A.   The Settlement Class (Pursuant to N.D. Guideline 1(a)) ........................................ 3

   B.   The Release (Pursuant to N.D. Guideline 1(b)) ...................................................... 4

   C.   The Settlement Benefits and Plan of Allocation (Pursuant to N.D. Guideline 1(c) and 1(e)) ................. 4

IV.  LEGAL STANDARD ................................................................................................. 7

V.   ARGUMENT ............................................................................................................... 7

   A.   The Court Should Approve the Settlement ............................................................... 7

   B.   The Settlement Is Fair, Adequate, and Reasonable. ................................................ 8

      i.    Procedural Concerns. .................................................................................... 8

      ii.   Substantive Issues. ........................................................................................ 9

VI.  THE COURT SHOULD PROVISIONALLY CERTIFY THE CLASS ................ 12

   C.   The Settlement Class Satisfies Rule 23(a) ............................................................. 13

      i.    Rule 23(a)(1): Numerosity. ......................................................................... 13

      ii.   Rule 23(a)(2): Commonality. ...................................................................... 13

      iii.  Rule 23(a)(3): Typicality. ........................................................................... 14

      iv.   Rule 23(a)(3): Adequacy. ........................................................................... 15

   D.   Because Common Question of Fact or Law Predominate, the Class Satisfies Rule 23(b)(3). ............. 15

      i.    Common Questions of Law and Fact Predominate Nationwide. ................ 16

      ii.   A Class Action Is the Superior Mechanism For Adjudicating This Dispute. ....... 16

VII.  THE PROPOSED NOTICE PROGRAM CONSTITUTES ADEQUATE NOTICE UNDER RULE 23 AND SHOULD BE APPROVED. ........................................ 17

VIII.  APPROVAL OF THE ATTORNEYS' FEES AND EXPENSES. ..................... 18

   A.   Plaintiffs' Counsel's Fee Request is Reasonable and Should be Preliminarily Approved (Pursuant to N.D. Guideline 6). ................. 18

      i.    Legal Standard. ........................................................................................... 18

      ii.   Plaintiffs' Counsel's Intended Fee Request Will be a Reasonable Percentage of the Total Benefit Made Available to the Class. ................. 19

      iii.  Plaintiffs' Counsel's Requested Fee Is Reasonable When Using ............... 20

IX.  THE COURT SHOULD APPROVE THE SERVICE AWARDS FOR CLASS REPRESENTATIVES (Pursuant to N.D. Guideline 7) ................................... 24

i

**X.  CAFA NOTICE (Pursuant to N.D. Guideline 10)** ................................................................ **24**

**XI. COMPARABLE OUTCOMES (Pursuant to N.D. Guideline 11)** ................................ **25**

**XII.    THE COURT SHOULD SET A FINAL APPROVAL SCHEDULE** ............................ **25**

**XIII.      CONCLUSION** ........................................................................................................ **25**

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adams v. Inter-Con Sec. Sys. Inc.*,
No. C-06-5428 MHP, 2007 WL 3225466 (N.D. Cal. Oct. 30, 2007)............................................. 9

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ..................................................................................................... 13, 17, 18

*Arenson v. Board of Trade of City of Chicago*,
372 F. Supp. 1349 (N.D. Ill. 1974) ........................................................................................ 25

*Beasley v. Wells Fargo Bank*,
235 Cal. App. 3d 1407 (1991) ................................................................................................. 22

*Bluetooth Headset Prods. Liability Litig.*,
654 F.3d 935 (9th Cir. 2011) ................................................................................................... 20

*Bowling v. Pfizer, Inc.*,
922 F. Supp. 1261 (S.D. Ohio 1996) ....................................................................................... 24

*Browning v. Yahoo! Inc.*,
No. C04-01463 HRL, 2007 WL 4105971, (N.D. Cal. Nov. 16, 2007)...................................... 20

*Cazares v. Saenz*,
208 Cal. App. 3d 279 (1989) ................................................................................................... 24

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1269, 1276 (9th Cir. 1992) ........................................................................................ 7

*Curtis-Bauer v. Morgan Stanley & Co., Inc.*,
2008 WL 4667090 (N.D. Cal. Oct. 22, 2008)........................................................................... 11

*Garner v. State Farm. Mut. Auto. Ins. Co.*,
2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) .......................................................................... 10

*Gen. Tel. Co. of the Southwest Falcon*,
457 U.S. 147 (1982)................................................................................................................. 15

*Glass v. UBS Fin. Servs., Inc.*,
No. C-06-4068 MMC, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007),
aff'd, 331 F. App'x 452 (9th Cir. 2009) ................................................................................... 21

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ........................................................................................ passim

*Harris v. Marhoefer*,
24 F.3d 16 (9th Cir. 1994) ....................................................................................................... 20

*Hartless v. Clorox Co.*,
273 F.R.D. 630 (S.D. Cal. 2011), aff'd, 473 F. App'x. 716 (9th Cir. 2012) ............................... 20

*Hefler v. Wells Fargo & Co.*,
No. 16-cv-05479-JST, 2018 WL 6619983 (N.D. Cal. Dec. 17, 2018) ......................................... 8

*In re Anthem, Inc. Data Breach Litig.*,
327 F.R.D. 299 (N.D. Cal. 2018)................................................................................................. 14

*In re Continental Illinois Securities Litigation*,
962 F.2d 566 (7th Cir. 1993) ...................................................................................................... 24

*In re Ferrero Litig.*,
583 F. App'x 665 (9th Cir. 2014) ................................................................................................ 21

*In re High-Tech Employee Antitrust Litig.*,
No. 11-CV-02509, 2014 WL 3917126 (N.D. Cal. Aug. 8, 2014) ................................................ 8

*In re Mego Fin. Corp*,
213 F. 3d 454 (9th Cir. 2000) ...................................................................................................... 8

*In re MyFord Touch Consumer Litig.*,
No. 13-cv-03072-EMC (N.D. Cal. Mar. 28, 2019)...................................................................... 12

*In re Netflix Privacy Litig.*,
2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ............................................................................ 11

*In re NVIDIA Corp. Derivative Litig.*,
No. C-06-06110-SBA, 2008 WL 5382544 (N.D. Cal. Dec. 22, 2008)........................................ 12

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
2020 WL 4212811 (N.D. Cal. July 22, 2020).............................................................................. 15

*Johnson v. Triple Leaf Tea Inc.*,
2015 WL 8943150 (N.D. Cal. Nov. 16, 2015) ............................................................................ 12

*Kelly v. Wengler*,
822 F.3d 1085 (9th Cir. 2016) .................................................................................................... 22

*Ketchum v. Moses*,
24 Cal. 4th 1122 (2001) .............................................................................................................. 24

*Laguna v. Coverall N. Am., Inc.*,
753 F.3d 918 (9th Cir.), vacated on other grounds, 772 F.3d 608 (9th Cir. 2014) ...................... 21

*Lealao v. Beneficial California, Inc.*,
82 Cal. App. 4th 19 (2000) .................................................................................................. 22, 24

*Linney v. Cellular Alaska P'ship*,
151 F.3d 1234 (9th Cir. 1998) ...................................................................................................... 7

*Lopez v. Youngblood*, No. CV-F-07-0474 DLB,
2011 WL 10483569 (E.D. Cal. Sept. 2, 2011) ................................................................ 20

*Mendoza v. Hyundai Motor Co.*,
No. 15-cv-01685-BLF, 2017 WL 34059 (N.D. Cal. Jan 23, 2017) .................................. 25

*Merola v. Atlantic Richfield Company*,
515 F.2d 165 (3d Cir. 1975) .......................................................................................... 24

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 .......................................................................................................... 9, 12

*Nwabueze v. AT&T, Inc.*,
No. C 09-01529 SI, 2014 WL 324262 (N.D. Cal. Jan. 29, 2014) ................................... 20

*Officers for Justice v. Civil Serv. Com.*,
688 F.2d 615 (9th Cir. 1982) ........................................................................................ 10

*Perdue v. Kenny A. ex rel. Winn*,
559 U.S. 542 (2010) ...................................................................................................... 22

*Ramos v. Countrywide Home Loans, Inc.*,
82 Cal. App. 4th 615 (2000) ......................................................................................... 22

*Rodriguez v. West Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ....................................................................... 9, 10, 11, 13

*Serrano v. Priest*,
20 Cal. 3d 25 (1977) ..................................................................................................... 22

*Six Mexican Workers v. Arizona Citrus Workers*,
904 F.2d 1301 (9th Cir. 1990) ...................................................................................... 21

*Slaven v. BP Am., Inc.*,
190 F.R.D. 649 (C.D. Cal 2000) .................................................................................... 14

*Stewart v. Applied Materials, Inc.*,
No. 15-cv-02632-JST, 2017 WL 3670711 (N.D. Cal. Aug. 25, 2017) ............................ 12

*Thayer v. Wells Fargo Bank*,
92 Cal. App. 4th 819 (2001) ......................................................................................... 25

*Van Vranken v. Atlantic Richfield Co.*,
901 F. Supp. 294 (N.D. Cal. 1995) ............................................................................... 25

*Vincent v. Hughes Air West*,
557 F.2d 759 (9th Cir. 1977) ........................................................................................ 22

v

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) ............................................................................ 21

*Wal-Mart Stores, Inc. v. Dukes*,
131 S. Ct. 2541 (2011)............................................................................................ 8

*Walsh v. CorePower Yoga LLC*,
2017 WL 589199 (N.D. Cal. Feb. 14, 2017) .......................................................... 9

*Williams v. MGM-Pathe Commc'ns Co.*,
129 F.3d 1026 (9th Cir. 1997 .............................................................................. 21

*Wren v. RGIS Inventory Specialists*,
No. 06-cv-05778-JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011)........................ 20

*Yamada v. Nobel Biocare Holding AG*,
825 F.3d 536 (9th Cir. 2016) ............................................................................... 20

*Young v. Polo Retail, LLC*,
No. C-02-4546 WRW, 2007 WL 951821 (N.D. Cal. Mar. 28, 2007) ........................ 21

*Zinser v. Accufix Research Inst., Inc.*,
253 F.3d 1180 (9th Cir. 2001) ............................................................................. 16


**Statutes**
28 U.S.C. § 1715, *et seq*...................................................................................... 26


**Rules**

Federal Rule of Civil Procedure 23 ................................................................. passim


**Other Authorities**

MANUAL FOR COMPLEX LITIGATION, § 21.633 ....................................................... 18

1 NEWBERG ON CLASS ACTIONS § 3.10 (1992)...................................................... 14

2 NEWBERG ON CLASS ACTIONS § 11.281 (1992) .................................................. 16

Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 UCLA L. Rev. 1303 (2006)............................................................. 26

vi

### MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiffs Michelle Salinas, Raymel Washington, and Amanda Gordon ("Plaintiffs"), by and through Plaintiffs' Counsel,[1] respectfully submit this memorandum in support of Plaintiffs' Motion for Approval of Class Action Settlement, Provisional Certification of Nationwide Settlement Class, and Approval of Procedure for and Form of Notice to Settlement Class (the "Motion"). The Settlement Agreement (hereafter, "Settlement" or "Settlement Agreement") and its exhibits, which are attached as **Exhibit 1** to the Declaration of Melissa Emert ("Emert Decl."), filed herewith, was negotiated following the guidelines provided in the Northern District's Procedural Guidance for Class Action Settlement ("N.D. Cal. Guidelines") and meets all the criteria for approval under Federal Rule of Civil Procedure ("Rule") 23.

Plaintiffs' operative Consolidated Complaint, ECF. No. 73, alleges that Defendants failed to take reasonable steps to safeguard customer information in connection with two data breaches, the first occurring in December 2021 and the second occurring in 2023. The breaches resulted in the unauthorized access to the PII of Cash App Investing ("CAI") customers, including Plaintiffs' and the Settlement Class Members' full names and Cash App brokerage account numbers. Plaintiffs also allege that there are security vulnerabilities affecting the Cash App mobile application itself. Plaintiffs allege that because of Defendants' negligence, Plaintiffs and Class Members' PII has been compromised and their financial accounts, as well as accounts linked to Cash App, are not secure. Plaintiffs further allege that potential class members' accounts were accessed without authorization and/or used by unauthorized actors and that Defendants failed to respond appropriately when class members reported issues with their accounts. Plaintiffs allege a variety of common law and statutory claims. *See* Consolidated Complaint, ECF No. 73.

Plaintiffs' Counsel and Defendants' Counsel conducted a thorough examination and investigation of the facts and law relating to the matters in the Litigation. The Parties participated in three all-day mediation sessions in 2023 on April 4, October 18, and November 15 with Robert A.

---

[1] All capitalized terms not otherwise defined herein shall have the same definitions as set out in the Settlement Agreement. *See* Emert Decl., Ex. 1.

Meyer, Esq. of JAMS, which, after lengthy further negotiations, ultimately resulted in the settlement memorialized in the Settlement Agreement.

Pursuant to the Settlement Agreement, Defendants have agreed to make a $15 million common fund available to Class Members as a non-reversionary Settlement Fund. Defendants have also agreed to additional non-monetary relief for the Settlement Class Members.

Plaintiffs will seek approval of a Service Award of $2,500 for each class representative after the Class Members are notified and have the opportunity to object to the Settlement. Plaintiffs' Counsel will also seek approval of an award of 25% of the settlement value in Attorneys' Fees and Expenses after the Class Members are notified and have the opportunity to object.

The Settlement is fair, reasonable, and adequate and falls within the range of possible approval. It is the product of extended arms-length negotiations between experienced attorneys familiar with the legal and factual issues of this case. All Class Members are treated fairly under the terms of the Settlement. Plaintiffs, by and through their counsel, have conducted an extensive investigation into the facts and law relating to this matter as set forth below and in the accompanying Emert Declaration. Plaintiffs and their counsel hereby acknowledge that in the course of their investigation they received, examined, and analyzed the information, documents, and materials that they deem necessary and appropriate to enable them to enter into the Settlement on a fully informed basis.

As detailed below, continued litigation carries considerable risk of a lesser recovery or none at all. Through the Settlement, Class Members have the opportunity to achieve a certain recovery with the benefit of a consumer-friendly procedure supervised by an experienced Settlement Administrator. The Court should enter the proposed Preliminary Approval Order.

## II.    PROCEDURAL BACKGROUND

On August 23, 2022, Plaintiffs Salinas and Washington filed a Class Action Complaint asserting claims against both Block and CAI "for their failure to exercise reasonable care . . ." in connection with the data breach which was disclosed by Defendants in or around April 2022 (the "Data Breach"). Case No. 22-cv-04823, ECF No. 1, ¶ 1. Plaintiffs Salinas and Washington brought eleven separate claims and originally sought to represent a nationwide class of individuals "whose Private Information was compromised because of the Data Breach," as well as Illinois, California, and Texas subclasses. *Id*. at ¶ 94.

On November 2, 2022, Plaintiff Gordon filed a separate complaint concerning the same Data Breach and, as noted above, the security vulnerabilities affecting the Cash App mobile application itself. Case No. 22-cv-06787, ECF No. 1, ¶ 4. Plaintiff Gordon originally sought to represent a nationwide class of "current or former customers . . . who have had their [Private Information] compromised as a result of Defendants' negligent security . . .," as well as a Texas subclass. *Id.* ¶ 70.

Plaintiff Gordon's opposition to consolidation, filed in December 2022, was withdrawn following extensive conversations between the Parties. Plaintiffs Gordon, Salinas, and Washington, along with their counsel, filed for consolidation on December 21, 2023 and appointment of interim lead class counsel. The operative Consolidated Complaint was filed on February 9, 2024, as an exhibit to the Supplemental Declaration of Nicholas Migliaccio (ECF No. 73). The Consolidated Complaint includes allegations of a Second Data Breach, expands on the allegations regarding the Cash App mobile application that were included in the original complaint filed by Plaintiff Gordon, and asserts that Defendants generally failed to take appropriate steps to respond to user complaints of unauthorized funds transfers. In the Consolidated Complaint, Plaintiffs sought to represent the following nationwide Class (*See*, Consolidated Complaint, ECF 73 at ¶108):

> All persons who are current or former customers of Defendants or any of Defendants' affiliates, parents, or subsidiaries and who had their PII, Cash App account, or Cash App Investing account accessed or obtained without their authorization or who otherwise had unauthorized, unintended or fraudulent withdrawals or transfers to or from, or alleged error in connection with, a Cash App or Cash App Investing account or any linked financial account.

## III.    TERMS OF THE PROPOSED SETTLEMENT

### A.    *The Settlement Class* **(Pursuant to N.D. Guideline 1(a)).**

The Settlement Class and the Class proposed in the operative Consolidated Complaint, ECF. No. 73, are near identical and defined as follows[2]: "All persons who are current or former customers of Defendants or any of Defendants' affiliates, parents, or subsidiaries and who had their Personal Information, Cash App account, or Cash App Investing account accessed or obtained without their

---

[2]    The only difference is that the Settlement Class definition in the Settlement Agreement incorporates a four (4) year look back, running from the filing of the first complaint, being the Salinas complaint.

3

authorization or who otherwise had unauthorized, unintended, or fraudulent withdrawals or transfers to or from, or alleged error in connection with, a Cash App or Cash App Investing account or any linked financial account in the period of four (4) years prior to the filing of the Salinas Complaint (which was filed on August 23, 2022) through the Notice Date." S.A. II.B.

**B.     *The Release* (Pursuant to N.D. Guideline 1(b)).**

In exchange for these Settlement Benefits, each Plaintiff and each class member who has not opted out of the Settlement Class shall release Defendants from the released claims, as further set forth in the Settlement Agreement. S.A. at II.K. The claims sought to be released by the Settlement are consistent with the claims in the Consolidated Complaint.

**C.     *The Settlement Benefits and Plan of Allocation* (Pursuant to N.D. Guideline 1(c) and 1(e)).**

The Settlement provides for equitable and monetary relief in the form of a $15 Million Common Fund to be used by the Settlement Administrator to pay (a) Notice and Administrative Expenses; (b) Approved Settlement Class Members' Claims; (c) Taxes and Tax-Related Expenses; (d) Fee Award and Costs approved by the Court; and (e) Service Award Payments approved by the Court. Emert Decl., ¶ 10. The Monetary Relief consists of:

(a)     **Reimbursement for Out-of-Pocket Losses.** All Settlement Class Members may submit a claim for reimbursement of Out-of-Pocket Losses. To receive reimbursement for Out-of-Pocket Losses, Settlement Class Members must submit a valid Claim Form;

(b)     **Reimbursement for Lost Time.** All Settlement Class Members may submit a claim for reimbursement of Lost Time up to three (3) hours at a rate of $25.00 per hour.  A claim for Lost Time may be combined with a claim for reimbursement for Out-of-Pocket Losses and Transaction Losses;

(c)     **Reimbursement for Transaction Losses.** All Settlement Class Members may submit a claim for reimbursement for Transaction Losses. A claim for reimbursement for Out-of-Pocket Losses may be combined with a claim for Lost Time and Transaction Loss;

(d)     **Pro Rata Adjustment to Approved Claims.** All Approved Claims will be adjusted upward or downward depending on the amount of claims that are made. Emert Decl., ¶ 9.

The Settlement also provides for non-monetary benefits in the form of security measures implemented by Defendants. Emert Decl. ¶ 10. Defendants represent that they have implemented numerous security measures, which will benefit all Class Members, whether or not they submit a claim, including Vulnerability Management, Infrastructure/Application Testing, Threat Intelligence, and Third Party Attestation.  Emert Decl., ¶ 10. As set forth in the Emert Declaration, Class Counsel submits that the Settlement here presents a robust relief package and valuable outcome for the Settlement Class.  ¶ 265.).

### D.     *Other Affected Cases, If Any* **(Pursuant to N.D. Guideline 1(d)).**

Class Counsel submit that the Settlement does not affect any other cases beyond those contemplated here: *Salinas, et al. v. Block Inc., et al.*, Case No. 22-cv-4823, filed in the U.S. District Court for the Northern District of California on August 23, 2022, and *Gordon v. Block, Inc., et al.*, Case No. 3:22-cv-6787, filed in the U.S. District Court for the Northern District of California on November 2, 2022.

### E.     *Notice Plan* **(Pursuant to N.D. Guideline 3.**

Not later than ten (10) calendar days after the Settlement Agreement is filed with the Court, the Settlement Administrator, on Defendants' behalf, shall draft and serve or cause to be served notice of the proposed Settlement upon the appropriate federal and state officials, as provided by the Class Action Fairness Act, 28 U.S.C. § 1715, *et seq.*  The Settlement Administrator shall also (i)  provide notification of the proposed settlement to the Settlement Class Members as set forth in the Settlement Agreement[3]; (ii) create and host a website, publicly accessible from the Notice Date until at least six months after the Effective Date, dedicated to provide information related to the Action, including access to relevant publicly available court documents, the settlement and the Settlement Agreement, the long-form notice of the settlement, and providing Settlement Class Members with the ability to

---

[3] The proposed notice program here informs the Class of their rights and includes a comprehensive plan for direct notice (via email notice for those Class Members for whom Defendants has such contact information), online notice, social media exposure and a Settlement Website, and constitutes the best notice practicable under the circumstances.

submit claims and supporting documentation for compensatory relief; (iii) maintain a toll-free telephone number with live operators and a P.O. Box by which Settlement Class Members can seek additional information regarding this Settlement Agreement; (iv) process claims and supporting documentation submissions and provide approved payments to Settlement Class Members; (v) process requests for exclusion from Settlement Class Members;  (vi) report on a weekly basis to Class Counsel and to Defendants' Counsel the information pertaining to Class Notices sent, claims received, claims paid, claims approved and claims denied; and (vii) administrate any other provision of the Settlement Agreement that relates to the settlement and claims administration.

**F.    *Claim Form and Expected Claims Rate* (Pursuant to N.D. Guideline 1(f)).**

Settlement Class Members need only submit a relatively simple claim form with basic questions about class membership. Settlement Agreement at § II(L)(2) and Exhibit C. Class Members may qualify for reimbursement for Out-of-Pocket Losses, Lost Time, or Transaction Losses. The Claim Form can be completed online, and Class Members have the option to print and mail the Claim Form to the Settlement Administrator. Settlement Agreement at § II(L)(2). This procedure is claimant-friendly, efficient, cost-effective, proportional and reasonable. Plaintiffs' Counsel estimate, based on their experiences with recent settlements in other data breach cases and the input of the Settlement Administrator, that up to approximately 50,000 Class Members may submit qualified and documented transactional loss or out-of-pocket claims. Emert Decl., ¶ 13.

**G.    *Reversions* (Pursuant to N.D. Guideline 1(g)).**

The Settlement Fund is non-reversionary. To the extent any monies remain in the Net Settlement Fund more than the stipulated period after the distribution of Settlement Payments, a subsequent Settlement Payment will be made to all Claimants with Approved Claims who cashed or deposited the initial payment they received.

**H.    *Settlement Administration* (Pursuant to Guideline 2(a)).**

The Parties propose that Angeion—an experienced and reputable national class action administrator—serve as Administrator to provide notice; administer and make determinations regarding claim forms; process settlement payments; make distributions; and provide other services

necessary to implement the Settlement. SA at § II.E; *see generally* Weisbrot Decl. The costs of the Administrator will be paid by Defendants out of the Settlement Fund.

The Parties selected Angeion as the Administrator following a highly competitive bidding process to identify the most efficient settlement administration option for the benefit of the Class Members. Emert Decl. ¶ 11.

### I.    *Angeion's Security Safeguards* **(Pursuant to N.D. Guideline 2(b)).**

Angeion recognizes the critical need to secure its physical and network environments and protect data in its custody. Weisbrot Decl. ¶ 38. Angeion's privacy practices comply with the California Consumer Privacy Act, as currently drafted, and Angeion imposes numerous additional data security measures for the protection of Personally Identifiable Information (PII) and Personal Health Information (PHI) as detailed in the Weisbrot Decl. ¶¶ 39-42.

## IV.    LEGAL STANDARD

Strong judicial policy favors settlement of class actions. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1269, 1276 (9th Cir. 1992); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998). "The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "Rule 23(e)… require[s] a two-step process for the approval of class action settlements: the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." *In re High-Tech Employee Antitrust Litig.*, No. 11-CV-02509, 2014 WL 3917126, at *13 (N.D. Cal. Aug. 8, 2014) (internal quotations and citations omitted).

## V.    ARGUMENT

### A.    *The Court Should Approve the Settlement.*

A decision "to approve or reject a settlement is committed to the sound discretion of the trial judge because [s]he is exposed to the litigants, and their strategies, positions, and proof." *In re Mego Fin. Corp*, 213 F. 3d 454, 458 (9th Cir. 2000). Rule 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler*

*Corp.*, 150 F.3d 1101, 1026 (9th Cir. 1998) ("*Hanlon*"). Under Ninth Circuit precedent, the district court must balance a number of factors including:

> (1) the strength of the Plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Id.* Rule 23 similarly requires the district court to consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>     (i) the costs, risks, and delay of trial and appeal;
>     (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>     (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>     (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The Court should apply "the framework set forth in Rule 23, while continuing to draw guidance from the Ninth Circuit's factors and relevant precedent." *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 17, 2018).

## B.   The Settlement Is Fair, Adequate, and Reasonable.

### i.   Procedural Concerns.

The Court must consider whether "the class representatives and class counsel have adequately represented the class" and whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(A)-(B). "The proposed settlement need not be ideal, but it must be fair and free of collusion, consistent with a Plaintiffs' fiduciary obligations to the class." *Walsh v. CorePower Yoga LLC*, 2017 WL 589199, at *6 (N.D. Cal. Feb. 14, 2017) (citing *Hanlon*, 150 F.3d at 1027).

### a.   Adequate Representation of the Class.

As discussed more fully in Section 5 VI (c) (v) and (vi), *supra*, Plaintiffs have no conflicts of interest with the Class and have invested significant time and resources in this Litigation. Plaintiffs' Counsel have successfully represented numerous Plaintiff classes, involving a variety of claims, in state and federal courts throughout the country and effectively represented the class interests in this case.

**b.      Arm's Length Negotiations.**

The Ninth Circuit "put[s] a good deal of stock in the product of an arm's-length, non-collusive, negotiated resolution" in approving a class action settlement. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). Class settlements are presumed fair when they are reached "following sufficient discovery and genuine arms-length negotiation," both of which occurred here. *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("*DIRECTV*").

Prior to agreeing to the Settlement, the Parties conducted a thorough examination and investigation of the facts and law relating to the matters in the litigation and engaged in three full-day mediation sessions with a highly experienced mediator: "The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Adams v. Inter-Con Sec. Sys. Inc.*, No. C-06-5428 MHP, 2007 WL 3225466, at *3 (N.D. Cal. Oct. 30, 2007).

ii.      Substantive Issues.

Rule 23(e)(2)(C) and (D) set forth factors for conducting "a 'substantive' review of the terms of the proposed settlement." Fed. R. Civ. P. 23(e)(2)(C)-(D) advisory committee's note to 2018 amendment. In determining whether "the relief provided for the class is adequate," the Court must consider "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). In addition, the Court must consider whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D).

**c.      Strength of Plaintiffs' Case and Risks of Continued Litigation.**

In determining the likelihood of a Plaintiffs' success on the merits of a class action, the court's "determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Officers for Justice v. Civil Serv. Com.*, 688 F.2d 615, 625 (9th Cir. 1982) (internal quotations omitted). The court may "presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiffs' likelihood of recovery."

*Garner v. State Farm. Mut. Auto. Ins. Co.,* 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010) (citing *Rodriguez v. West Publ'g Corp.,* 563 F.3d 9448, 965 (9th Cir. 2009)).

Here, as set forth in the Emert Declaration, Plaintiffs' Counsel engaged in arms-length negotiations with Defendants' counsel, and Plaintiffs' Counsel was thoroughly familiar with the applicable facts, legal theories, and potential defenses. Emert Decl., ¶ 16. Although Plaintiffs and Plaintiffs' Counsel have confidence in Plaintiffs' claims, a favorable outcome is not assured. *Id.* They also recognize that they would face risks at class certification, summary judgment, and trial. *Id.* Defendants vigorously deny Plaintiffs' allegations and would no doubt present a vigorous defense. Thus, the proposed Settlement provides the Class with an outstanding opportunity to obtain significant relief at this stage in the Litigation, while abrogating the risks that might prevent the Class from obtaining any relief. *Id.*

Plaintiffs and Plaintiffs' Counsel, after taking into account the foregoing along with other risks and the costs of further litigation, are satisfied that the terms and conditions of this Agreement are fair, reasonable, adequate and equitable, and that a settlement of the Litigation and the prompt provision of effective relief to the Settlement Class are in the best interest of the Settlement Class Members. Emert Decl., ¶¶ 18-21. These considerations have been found to weigh heavily in favor of settlement. *See Rodriguez,* 563 F.3d at 966; *Curtis-Bauer v. Morgan Stanley & Co., Inc.,* 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiffs class.").

In addition to the risks of continuing the Litigation, Plaintiffs would also face risks in certifying a class and maintaining class status through trial. Even assuming that the Court were to grant a motion for class certification, Defendants could still move to decertify the Class at any time. *See In re Netflix Privacy Litig.,* 2013 WL 1120801, at *6 (N.D. Cal. Mar. 18, 2013) ("The notion that a district court could decertify a class at any time is one that weighs in favor of settlement.") (internal citations omitted). From their prior experience, Plaintiffs' Counsel expects that Defendants would likely appeal from a decision certifying the Class pursuant to Rule 23(f), and/or move for decertification at a later date. Consummating this Settlement eliminates these risks by ensuring Class Members a recovery that

is certain and immediate. *Johnson v. Triple Leaf Tea Inc.,* 2015 WL 8943150, at *4 (N.D. Cal. Nov. 16, 2015).

### d. Effectiveness of Distribution Method (Pursuant to N.D. Guideline 3).

The Court must consider "the effectiveness of [the] proposed method of distributing relief to the class." Fed. R. Civ. P. 23(e)(2)(C)(ii). Settlement Class Members need only submit a relatively simple claim form with basic questions about class membership. Settlement Agreement at §II(L)(2) and Exhibit C. Class Members may qualify for reimbursement for Out-of-Pocket Losses, Lost Time, or Transaction Losses. The Claim Form can be completed online, and Class Members have the option to print and mail the Claim Form to the Settlement Administrator. Settlement Agreement at § II(L)(2). This procedure is claimant-friendly, efficient, cost-effective, proportional and reasonable. Pursuant to N.D. Guidelines ¶1(f), Plaintiffs' Counsel estimate, based on their experiences with recent settlements in other data breach cases and the input of the Settlement Administrator, that up to approximately 50,000 Class Members may submit qualified and documented transactional loss or out-of-pocket claims. Emert Decl., ¶ 13.

### e. Terms of Attorneys' Fees.

Plaintiffs' Counsel intend to seek an award of attorneys' fees and costs in the amount of twenty-five percent (25%) of the benefit conferred, including remedial relief in the form of agreed security measures and the $15 Million Settlement Common Fund. That request is addressed in Section VIII, *infra*.

### f. Supplemental Agreements.

There are no applicable "supplemental agreements" within the meaning of Rule 23(e)(3).

### g. Equitable Treatment of Class Members.

All Settlement Class Members are entitled to obtain monetary relief in the form of reimbursement for Out-of-Pocket Losses, Lost Time, or Transaction Losses. The Settlement also provides for an Incentive Award for Class Representatives, which is explained in Section IX , *infra*.

This allocation plan treats all Class Members fairly based on the strength of their claims. *See In re MyFord Touch Consumer Litig.*, No. 13-cv-03072-EMC (N.D. Cal. Mar. 28, 2019), ECF No. 526 at 4-5 (granting approval of settlement plan that pays a lower dollar amount in relation to the

comparative weakness of certain claims). Because this plan will deter fraudulent claims and treat Class Members equitably relative to each other, it should be approved as fair, reasonable, and adequate.

### h.    Plaintiffs' Counsel's Experience.

Although not articulated as a separate factor in Rule 23(e), courts have given considerable weight to the opinion of experienced and informed counsel who support settlement. *See DIRECTV*, 221 F.R.D. at 528; *see also In re NVIDIA Corp. Derivative Litig.*, No. C-06-06110-SBA, 2008 WL 5382544 at *4 (N.D. Cal. Dec. 22, 2008). In deciding whether to approve a proposed settlement of a class action, "[t]he recommendations of Plaintiffs' counsel should be given a presumption of reasonableness." *Stewart v. Applied Materials, Inc.*, No. 15-cv-02632-JST, 2017 WL 3670711, at *6 (N.D. Cal. Aug. 25, 2017). Deference to Plaintiffs' Counsel's evaluation of the Settlement is proper because "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez*, 563 F.3d at 967. Here, the Settlement was negotiated by counsel with extensive experience in consumer class action litigation. *See* Emert Decl. **Exhibits 2, 3** and **4** (firm resumes). Based on their experience, Plaintiffs' Counsel concluded that the Settlement provides exceptional results for the Class while sparing the Class from the uncertainties of continued and protracted litigation.

## VI.    THE COURT SHOULD PROVISIONALLY CERTIFY THE CLASS

The Class consists of "All persons who are current or former customers of Defendants or any of Defendants' affiliates, parents, or subsidiaries and who had their Personal Information, Cash App account, or Cash App Investing account accessed or obtained without their authorization or who otherwise had unauthorized, unintended or fraudulent withdrawals or transfers to or from, or alleged error in connection with, a Cash App or Cash App Investing account or any linked financial account in the period of four (4) years prior to the filing of the Salinas Complaint (which was filed on August 23, 2022) through the Notice Date."

Excluded from the Settlement Class are (i) any judge or magistrate judge presiding over this Action, members of their staff, and members of their immediate families; (ii) the Released Parties; (iii) persons who properly execute and file a timely request for exclusion from the Settlement Class; (iv) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (v) counsel for Defendants; and (vi) the legal representatives, successors, and assigns of any

such excluded persons.

The Ninth Circuit has recognized that certifying a settlement class to resolve consumer lawsuits is a common occurrence. *Hanlon*, 150 F.3d at 1019. When presented with a proposed settlement, a court must first determine whether the proposed settlement class satisfies the requirements for class certification under Rule 23. In assessing those class certification requirements, a court may consider that there will be no trial. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial.") For the reasons below, the Class meets the requirements of Rule 23(a) and (b).

### C.   The Settlement Class Satisfies Rule 23(a).

#### i.   Rule 23(a)(1): Numerosity.

The first requirement for maintaining a class action is that its members are so numerous that joinder of all members would be "impracticable." *See* Fed. R. Civ. P. 23(a)(1). "As a general matter, courts have found that numerosity is satisfied when class size exceeds 40 members, but not satisfied when membership dips below 21." *Slaven v. BP Am., Inc*., 190 F.R.D. 649, 654 (C.D. Cal 2000).  Here, Class Counsel expects that up to approximately 50,000 Class Members may submit qualified and documented transactional loss or out-of-pocket claims. *See* Emert Decl. ¶ 14.

Accordingly, numerosity is established.

#### ii.   Rule 23(a)(2): Commonality.

The second requirement of Rule 23 is the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is established if Plaintiffs' and class members' claims "depend on a common contention…capable of class-wide resolution . . . meaning that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). Because the commonality requirement may be satisfied by a single common issue, it is easily met. 1 Newberg on Class Actions § 3.10, at 3-50 (1992).

Here, all of the Class Members' claims arise from a common nucleus of facts and are based on the same legal theories. Plaintiffs allege that Defendants failed to implement appropriate security controls and that the Settlement Class Members were injured as a result when Defendants' inadequate

data security measures resulted in compromise of their PII or their accounts, and when Defendants failed to take appropriate steps to address complaints about those injuries.  As such, their claims are subject to common factual questions arising from Defendant's security practices and complaint handlings, and the commonality requirement is met. *See In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 308 (N.D. Cal. 2018) (commonality requirement met in a data breach class action because Defendants stored all class members' PII in the same data warehouse); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2020 WL 4212811, at *23-24 (N.D. Cal. July 22, 2020) (common questions of law and fact included whether defendant employed sufficient security measures to protect class members' PII, whether  defendant knew its data security was inadequate, and whether defendant timely responded to the breach of customer data); and *Hanlon*, 150 F.3d at 1019 ("All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."). Here, all of the legal theories asserted by Plaintiffs are common to all Class Members. Thus, commonality is satisfied.

> iii.     Rule 23(a)(3): Typicality.

The third requirement of Rule 23(a) is that the claims of the representative Plaintiffs be "typical of the claims … of the class." *See* Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *See Hanlon*, 150 F.3d at 1020. In short, to meet the typicality requirement, the representative Plaintiffs simply must demonstrate that the members of the settlement class have the same or similar grievances. *Gen. Tel. Co. of the Southwest Falcon*, 457 U.S. 147, 161 (1982).

Plaintiffs' claims are typical of those of the Class. Like those of the Class, Plaintiffs' claims arise out of the alleged insufficiency of Defendants' data security practices. Plaintiffs therefore have precisely the same claims as the Class and must satisfy the same elements for each of the claims. The named Plaintiffs and all Class Members allegedly have been injured in the same way by the same course of conduct. Therefore, Plaintiffs satisfy the typicality requirement.

14

iv.    Rule 23(a)(3): Adequacy.

The final requirement of Rule 23(a) requires that the representative Plaintiffs "fairly and adequately protect the interests of the class." *See* Fed. R. Civ. P. 23(a)(4). This requires only that a class member does not have interests that are antagonistic to the class. *Hanlon*, 150 F.3d at 1020. Adequacy is presumed where a fair settlement was negotiated at arm's-length. 2 *Newberg on Class Actions, supra,* § 11.28, 11-59.

Plaintiffs' Counsel have vigorously and competently pursued the Class Members' claims. The arm's-length settlement negotiations that took place and the investigation they undertook demonstrate that Plaintiffs and Plaintiffs' Counsel adequately represent the Class. Moreover, the Class Representatives and Plaintiffs' Counsel have no conflicts of interests with the Class. *See* Emert Decl. ¶ 22. Rather, the Class Representatives, like each absent Class Member, have a strong interest in proving Defendants' common course of conduct, and obtaining redress. *See id.* In pursuing this litigation, Plaintiffs' Counsel, as well as the Class Representatives, have advanced and will continue to advance and fully protect the common interests of all members of the Class. *See id.* Plaintiffs' Counsel have extensive experience and expertise in prosecuting complex class actions. Plaintiffs' Counsel are active practitioners who are highly experienced in class action, product liability, and consumer fraud litigation. *See* Emert Decl., **Exhibits 2, 3 and 4**. (firm resumes). Accordingly, Rule 23(a)(4) is satisfied.

### D.    *Because Common Question of Fact or Law Predominate, the Class Satisfies Rule 23(b)(3).*

In addition to meeting the prerequisites of Rule 23(a), Plaintiffs must also meet one of the three requirements of Rule 23(b) to certify the proposed class. *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). Under Rule 23(b)(3), a class action may be maintained if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *See* Fed. R. Civ. P. 23(b)(3). Certification under Rule 23(b)(3) is appropriate and encouraged "whenever the actual interests of the parties can be served best by settling their differences in a single action." *Hanlon*, 150 F.3d at 1022.

i.     Common Questions of Law and Fact Predominate Nationwide.

The proposed Class is well-suited for certification under Rule 23(b)(3) because questions common to the Class Members predominate over questions affecting only individual Class Members. Predominance exists "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." *Hanlon*, 150 F.3d at 1022. As the Supreme Court has explained, when addressing the propriety of certification of a settlement class, courts consider the fact that a trial will be unnecessary and that manageability, therefore, is not an issue. *Amchem*, 521 U.S. at 620.

In this case, common questions of law and fact exist and predominate over any individual questions, including (in addition to whether this settlement is reasonable (*see Hanlon*, 150 F.3d at 1026-27)), *inter alia*: (1) whether Defendants knew and/or should have known that their security measures, protocols, screening procedures, and systems were deficient in terms of how they fail to protect against unauthorized access to (and unauthorized transactions from) customer accounts and, in some cases, users' PII; (2) whether Defendants failed to take reasonable steps to safeguard consumer information in connection with the December 2021 data breach that resulted in the unauthorized public release of Plaintiffs' and Settlement Class Members' full names and brokerage account numbers; (3) whether Defendants' failure to take adequate security measures following that data breach resulted in a second data breach in 2023 in which Cash App identified unauthorized access to customers' accounts, unauthorized transactions resulting from that access, and unauthorized access to customers' PII and account information; (4) whether Defendants failed to respond appropriately to user complaints; and (5) whether  Plaintiffs and the Settlement Class have been injured by the wrongs complained of, and if so, whether Plaintiffs and the Settlement Class are entitled to damages, injunctive and/or other equitable relief, including restitution or disgorgement, and if so, the nature and amount of such relief.

ii.     A Class Action Is the Superior Mechanism For Adjudicating This Dispute.

The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the Settlement Class Members. Each individual Settlement Class Member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to show Defendants' liability. Individualized litigation increases the

delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudications, economy of scale, and comprehensive supervision by a single court.

Moreover, since this action will now settle, the Court need not consider issues of manageability relating to trial. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial."). Accordingly, common questions predominate, and a class action is the superior method of adjudicating this controversy.

## VII.   THE PROPOSED NOTICE PROGRAM CONSTITUTES ADEQUATE NOTICE UNDER RULE 23 AND SHOULD BE APPROVED.

Upon preliminary approval, notice must be directed to class members. For class actions certified under Rule 23(b)(3), including settlement classes like this one, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). In addition, Rule 23(e)(1) applies to any class settlement and requires the Court to "direct notice in a reasonable manner to all class members who would be bound by a proposal." Fed. R. Civ. P. 23(e)(1).

When a court is presented with class notice pursuant to a settlement, both the class certification notice and notice of settlement may be combined in the same notice. MANUAL FOR COMPLEX LITIGATION, § 21.633 at 321-22 ("For economy, the notice under Rule 23(c)(2) and the Rule 23(e) notice are sometimes combined."). This notice allows class members to decide whether to opt out of or take part in the class and/or to object to the settlement and argue against final approval by the Court. *Id.* The proposed notice program here informs the Class of their rights and includes a comprehensive plan for direct notice (via email notice for those Class Members for whom Defendants has such contact information), online notice, and a Settlement Website, and constitutes the best notice practicable under the circumstances. *See gen.* Settlement Agreement at IV.E.

The Class Notice accurately informs Class Members of the salient terms of the Settlement, the Class to be certified, the date and location of the Final Approval Hearing, and the rights of all parties, including the rights of Settlement Class Members to file objections and to opt out of the Class. Additionally, the Class Notice provides information on how Class Members can object and opt out of the Class and to send those objections to the Court, information on how Class Members may access the case docket through the Court's Public Access to Court Electronic Records ("PACER"), and the contact information of Plaintiffs' Counsel. The Parties in this case have created and agreed to provide notice that will satisfy both the substantive and manner of distribution requirements of Rule 23 and due process. *See* Exs. A and B to the Settlement Agreement, at Emert Decl. **Exhibit 1**.

Accordingly, Plaintiffs respectfully request that this Court approve the notice program outlined in the Settlement Agreement.

## VIII.   APPROVAL OF THE ATTORNEYS' FEES AND EXPENSES.

### A.   *Plaintiffs' Counsel's Fee Request is Reasonable and Should be Preliminarily Approved* (Pursuant to N.D. Guideline 6)*.*

        i.      Legal Standard.

Plaintiffs' Counsel, prior to the Final Approval Hearing, and on or before the date set forth in the Preliminary Approval Order, will make their application for an award of the payment of Attorneys' Fees and Expenses in the amount of twenty-five percent of (i) the $15 million non-reversionary common fund and (ii) of the approximately $5 million of value provided to the Class through remedial relief that the Settlement addresses in the form of agreed-upon security measures and protocols. Under Ninth Circuit standards, it is appropriate for a District Court upon Final Approval, to analyze an attorneys' fee request and issue an award either based on (1) by making an award as a percentage of the total benefit made available to the settlement class, including costs, fees, and injunctive relief or (2) the "lodestar" method. *See e.g., Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 935, 941 (9th Cir. 2011); *Nwabueze v. AT&T, Inc.*, No. C 09-01529 SI, 2014 WL 324262, at *2-3 (N.D. Cal. Jan. 29, 2014); *Lopez v. Youngblood*, No. CV-F-07-0474 DLB, 2011 WL 10483569, at *11-12 (E.D. Cal. Sept. 2, 2011). Plaintiffs' fee request will be reasonable under either of these approaches. Further, an attorney is entitled to "recover as part of the award of attorney's fees those out-of-pocket that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994)

18

(internal quotation marks and citation omitted). To support an expense award, Plaintiffs should file an itemized list of their expenses by category, listing the total amount advanced for each category, allowing the Court to assess whether the expenses are reasonable. *See Wren v. RGIS Inventory Specialists*, No. 06-cv-05778-JCS, 2011 WL 1230826, at *30 (N.D. Cal. Apr. 1, 2011); N.D. Cal. Guidelines ¶ 6.

       ii.    Plaintiffs' Counsel's Intended Fee Request Will be a Reasonable Percentage of the Total Benefit Made Available to the Class.

Whether as a cross-check or as an independent methodology, at the Final Approval Hearing the Court can utilize the percentage-of-recovery method to verify that Plaintiffs' attorneys' fee request is reasonable. *See e.g., Nwabueze*, 2014 WL 324262, at *2-3. If "classwide benefits are not easily monetized, a cross-check is entirely discretionary," and the district court may make its award based entirely on the lodestar. *Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536, 547-48 (9th Cir. 2016) (explaining that *Bluetooth* stated that courts are "encouraged" but not required to cross-check a lodestar award).

When determining the value of the settlement, courts consider both the monetary and non-monetary benefits conferred under the settlement terms. *See, e.g., Staton v. Boeing Co.*, 327 F.3d 938, 972-74 (9th Cir. 2003); *Hartless v. Clorox Co.*, 273 F.R.D. 630, 645 (S.D. Cal. 2011), aff'd, 473 F. App'x. 716 (9th Cir. 2012); *Browning v. Yahoo! Inc.*, No. C04-01463 HRL, 2007 WL 4105971, at *14 (N.D. Cal. Nov. 16, 2007). Finally, Ninth Circuit precedent requires courts to award class counsel fees based on the total benefits being made available to class members rather than the amount actually claimed. *Young v. Polo Retail, LLC*, No. C-02-4546 WRW, 2007 WL 951821, at *8 (N.D. Cal. Mar. 28, 2007) (citing *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026 (9th Cir. 1997) ("district court abused its discretion in basing attorney fee award on actual distribution to class" instead of amount being made available)); *see also Nwabueze*, 2014 WL 324262, at *3 (calculating overall value of settlement to be $100 million if all class members requested billing summaries provided in settlement); *Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at *16 (N.D. Cal. Jan. 26, 2007) ("The Ninth Circuit has held, however, that the district court must award fees as a percentage of the entire fund, or pursuant to the lodestar method, not on the basis of the amount of the fund actually claimed by the class.") (citing *Williams*), aff'd, 331 F. App'x 452 (9th Cir. 2009).

In the Ninth Circuit, the benchmark for an attorney fee is 25% of the total settlement value, including the monetary and non-monetary recovery. *See Six Mexican Workers v. Arizona Citrus Workers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *see also Glass*, 2007 WL 221862, at *14 ("The Ninth Circuit has repeatedly held that 25% of the gross settlement amount is the benchmark for attorneys' fees awarded under the percentage method . . .").

Here, the value of the monetary portion of the Settlement Benefits made available to the Settlement Class is easily measured and is $15 million. (Settlement Agreement, ¶ II.E.) In addition, Plaintiffs estimate that the value of the non-monetary relief portion of the Settlement, *e.g.*, the agreed-upon security measures, is approximately $5 million. (Emert Decl., ¶¶ 27, 29.)[4] Thus, the requested fee of $5 million equals 25% of the total Settlement value estimated at approximately $20 million. Plaintiffs' Counsel will not be making the request until after preliminary approval. However, it is appropriate to generally discuss the requested fees anticipated at this juncture. Plaintiffs' Counsel requests, in addition to reasonable attorneys' fees, includes reimbursement of out-of-pocket expenses incurred by it in connection with the prosecution of this litigation. Emert Decl., ¶ 29. Plaintiffs' Counsel is typically entitled to reimbursement of all reasonable out-of-pocket expenses and costs in prosecution of the claims and in obtaining a settlement. *See Vincent v. Hughes Air West*, 557 F.2d 759, 769 (9th Cir. 1977). As required by the N.D. Cal. Guide ¶ 6, the expenses incurred will be approximately itemized in counsel's declarations at the time Plaintiffs' Counsel make their fee request. Emert Decl., ¶ 29. Here, the requested sum of twenty-five percent (25%) of the benefit conferred will be inclusive of both attorneys' fees *and* costs.

### iii.   Plaintiffs' Counsel's Requested Fee Is Reasonable When Using The Lodestar Approach as a Cross-Check.

Under the lodestar approach, "[t]he lodestar (or touchstone) is produced by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate." *Lealao v. Beneficial*

---

[4] The Court "need not determine the 'value' of particular injunctive relief." *In re Ferrero Litig.*, 583 F. App'x 665, 668 (9th Cir. 2014); *see also Laguna v. Coverall N. Am., Inc.*, 753 F.3d 918, 924 (9th Cir.), vacated on other grounds, 772 F.3d 608 (9th Cir. 2014). However, even where the value of the non-monetary relief cannot be "accurately ascertained," the district court still "should consider the value of [such] relief as a 'relevant circumstance'" in its fee determination. *Staton*, 327 F.3d at 974 (quoting *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1049 (9th Cir. 2002).

*California, Inc.*, 82 Cal. App. 4th 19, 26 (2000); *see also Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016) ("[A] court calculates the lodestar figure by multiplying the number of hours reasonably expended on a case by a reasonable hourly rate. A reasonable hourly rate is ordinarily the 'prevailing market rate [] in the relevant community.'") (alteration in original) (internal citation omitted) (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010)). Once the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative "multiplier to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained and the contingent risk presented." *Lealao*, 82 Cal. App. 4th at 26; *see also Serrano v. Priest*, 20 Cal. 3d 25, 48-49 (1977); *Ramos v. Countrywide Home Loans, Inc.*, 82 Cal. App. 4th 615, 622 (2000); *Beasley v. Wells Fargo Bank*, 235 Cal. App. 3d 1407, 1418 (1991) (multipliers are used to compensate counsel for the risk of loss, and to encourage counsel to undertake actions that benefit the public interest).

Plaintiffs' Counsel's efforts to date have included, without limitation:
- Pre-filing investigation;
- Drafting and filing two class action complaints;
- Drafting and filing a motion for consolidation and motion for appointment of interim class counsel;
- Drafting and filing the consolidated complaint;
- Interviewing hundreds of putative class members;
- Drafting and filing case management conference statements and case management stipulations;
- Propounding requests for pre-mediation informal discovery and information and reviewing such documents and information produced by Defendants;
- Drafting a comprehensive mediation statement and participating in three full day mediations before Robert Meyer of JAMS;
- Negotiating and/or drafting the Settlement Agreement along with corresponding documents, including the claim form and notice forms;
- Drafting this motion for approval and supporting documents, including a proposed preliminary approval order and a proposed final judgment;
- Retaining a consulting expert regarding Defendants' security measures; and
- Holding a lengthy and thorough bidding process for claims administrators.

(Emert Decl., ¶ 32.)

Before the Final Approval Hearing, Plaintiffs' Counsel's efforts will also include, without limitation:

- Preparing for and appearing at the Preliminary Approval Hearing;
- Reviewing and responding to correspondence from Class Members;
- Supervising the work of the Settlement Administrator; and

21

- Researching and drafting a reply memorandum and opposing objections, if any.

(Emert Decl., ¶¶ 31, 32.)

Plaintiffs' Counsel also anticipate significant work continuing through the preliminary approval process, the notice period and filing of final approval papers; communicating directly with Class Members; addressing issues raised by Class Members; coordinating closely with the claims administrator; addressing objections, if any; preparing and filing final approval papers, preparing for and attending the final approval hearing, addressing deficiencies in various claims; preparing for and addressing the informal claims appeals process for denied claims; addressing and litigating any appeals, if any; Plaintiffs' Counsel submit the time for future work that is required may be sought based on counsel's anticipated future work for the benefit of the class settlement. *See, Hanlon,* 150 F.3d at 1029-30.

Plaintiffs' Counsel point out that counsel bore considerable risk in litigating this case wholly on a contingent basis and advancing all costs. (Emert Decl., ¶ 30.)  Since Plaintiffs' Counsel's work is primarily focused on contingent-fee class action cases, it does not get paid in every case. *Id.* Frequently, it gets nothing or is awarded fees equal to only a small percentage of the amount it had worked. *Id.* Where a plaintiffs' firm does succeed, therefore, it is appropriate to award a multiplier, to compensate for the risks the firm regularly undertakes. As the California Supreme Court has explained:

> [a] contingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services. The implicit interest rate on such a loan is higher because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of conventional loans. A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions. If he is paid no more, competent counsel will be reluctant to accept fee award cases.

*Ketchum v. Moses*, 24 Cal. 4th 1122, at 1132-33 (2001); *see also Cazares v. Saenz*, 208 Cal. App. 3d 279, 288 (1989) ("in theory, a contingent fee in a case with a 50 percent chance of success should be twice the amount of a non-contingent fee for the same case."). Indeed, in *In re Continental Illinois Securities Litigation*, 962 F.2d 566 (7th Cir. 1993), a federal appellate court reversed a fee award in a class action for, among other things, the trial court's refusal to enhance class counsel's lodestar for contingency risk. It explained, "The judge refused to award a risk multiplier—that is, to give the lawyers more than their ordinary billing rates in order to reflect the risky character of their undertaking. This was error in a case in which the lawyers had no source of compensation for their services." *Id.* at

569. "[T]he failure to make any provision for risk of loss may result in systematic under-compensation of Plaintiffs' counsel in a class action case, whereas we have said the only fee that counsel can obtain is, in the nature of the case, a contingent one." *Id.*

Second, Plaintiffs' Counsel reached a settlement before class certification and thus should be rewarded for its efficiency (and the concomitant savings to the judicial system). In *Lealao*, the Court explained that, unless multipliers are provided when counsel agree to settle early, there will be "a disincentive to settle promptly inherent in the lodestar methodology. Considering that our Supreme Court has placed an extraordinarily high value on settlement, it would seem counsel should be rewarded, not punished, for helping to achieve that goal, as in federal courts." *Lealao*, 82 Cal. App. 4th at 52 (citing *Merola v. Atlantic Richfield Company*, 515 F.2d 165, 168 (3d Cir. 1975)) (lodestar-multiplier approach "permits the court to recognize and reward achievements of a particularly resourceful attorney who secures a substantial benefit for his clients with a minimum of time invested"); *Bowling v. Pfizer, Inc.*, 922 F. Supp. 1261, 1282-1283 (S.D. Ohio 1996) (awarding a multiplier where case settled "in swift and efficient fashion"); *Arenson v. Board of Trade of City of Chicago*, 372 F. Supp. 1349, 1358 (N.D. Ill. 1974) (awarding a fee of four times the normal hourly rate on ground that, if the case had not settled and gone to verdict, "there is no doubt that the number of hours of lawyer's time expended would be more than quadruple the number of hours expended to date"). Similarly, in *Thayer v. Wells Fargo Bank*, 92 Cal. App. 4th 819 (2001), the Court noted that "[t]he California cases appear to incorporate the 'results obtained' factor into the 'quality' factor: i.e., high-quality work may produce greater results in less time than would work of average quality, thus justifying a multiplier."

Third, as explained above, Plaintiffs' Counsel achieved an excellent settlement in this Litigation.

Finally, as noted above, Plaintiffs' Counsel will have to perform more work before the Settlement will become effective. Counsel is entitled to include that estimate in its request. *Hanlon, supra,* at 1029-30.

## IX.   THE COURT SHOULD APPROVE THE SERVICE AWARDS FOR CLASS REPRESENTATIVES (Pursuant to N.D. Guideline 7)

Counsel for Plaintiffs, prior to the Final Approval Hearing, and on or before the date set forth in the Preliminary Approval Order, will make their application for a fair and reasonable Service Award for the three class representatives who agreed to act as Plaintiffs in the case. Accordingly, at the Final Approval hearing, Plaintiffs will be seeking approval of a $2,500 Service Award to each Class Representative as it is just, fair and reasonable. In deciding whether to approve such an award, a court should consider: "(1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulty encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation and; (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995); *see also* N.D. Cal. Guidelines ¶ 7.

Plaintiffs took on substantial risk, most importantly the risk of publicity and notoriety. Emert Decl., ¶ 30. Plaintiffs also remained actively involved in the Litigation prior to and after settlement. *Id.*

The proposed Service Award is reasonable in light of Plaintiffs' efforts and the relief to the Class resulting from this Litigation. *See* Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 UCLA L. Rev. 1303, 1333 (2006) (an empirical study of incentive awards to class action Plaintiffs has determined that the average aggregate incentive award within a consumer class action case is $29,055.20, and that the average individual award is $6,358.80.); *Mendoza v. Hyundai Motor Co.*, No. 15-cv-01685-BLF, 2017 WL 34059, at *15 (N.D. Cal. Jan 23, 2017) ("$5,000 is presumptively reasonable.") (citations omitted). The Settlement is not conditioned upon the Court's grant of any Service Award. SA § H.

## X.   CAFA NOTICE (Pursuant to N.D. Guideline 10)

Not later than ten (10) calendar days after the Settlement Agreement is filed with the Court, the Settlement Administrator, on Defendants' behalf, shall draft and serve or cause to be served

notice of the proposed Settlement upon the appropriate federal and state officials, as provided by the Class Action Fairness Act, 28 U.S.C. § 1715, *et seq.*

## XI.  COMPARABLE OUTCOMES (Pursuant to N.D. Guideline 11)

The information requested by N.D. Cal. Guidelines ¶ 11 regarding past distributions in comparable class settlements is provided in the Emert Decl., ¶¶ 25-26. Class Counsel submits that the Settlement here presents a robust relief package and valuable outcome for the Settlement Class. While not a perfect comparison, Class Counsel believes that the closest comparable cases are traditional data breach cases involving unauthorized access to PII, with which this Settlement compares favorably. *Id.*

## XII.  THE COURT SHOULD SET A FINAL APPROVAL SCHEDULE

The last step in the settlement approval process is the Final Approval Hearing at which the Parties will seek final approval of the proposed Settlement. At the Final Approval Hearing, proponents of the Settlement may explain and describe its terms and conditions and offer argument in support of final approval of the Settlement. Also, Class Members, or their counsel, may be heard in support of or in opposition to final approval of the Settlement. Plaintiffs request the Court issue the schedule set forth in the Emert Decl., ¶ 34.

## XIII.  CONCLUSION

For the foregoing reasons, Plaintiffs' Counsel respectfully request that the Court grant preliminary approval and enter the Proposed Preliminary Approval Order attached hereto.

Dated: March 3, 2024                              Respectfully submitted,

/s/ *Melissa R. Emert*
Melissa R. Emert (admitted *pro hac vice*)
Gary Graifman (admitted *pro hac vice*)
**KANTROWITZ, GOLDHAMER
& GRAIFMAN, P.C.**
135 Chestnut Ridge Road, Suite 200

Montvale, NJ 07645
Tel: (845) 356-2570

Nicholas A. Migliaccio (admitted *pro hac vice*)
Jason S. Rathod (admitted *pro hac vice*)
**MIGLIACACCIO & RATHOD LLP**
412 H St NE, Suite 302
Washington DC 20002
Telephone (202) 470-3520
nmigliaccio@classlawdc.com
jrathod@classlawdc.com

William B. Federman (admitted *pro hac vice*)
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
Ph: 405-235-1560

Daniel E. Gustafson (admitted *pro hac vice*)
David A. Goodwin (admitted *pro hac vice*)
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Tel: (612) 333-8844
dgustafson@gustafsongluek.com
dgoodwin@gustafsongluek.com

Scott. D Hirsch (admitted *pro hac vice*)
**SCOTT HIRSCH LAW GROUP**
6810 N. State Road 7
Coconut Creek, FL 33073
(561) 569-7062
scott@scotthirschlawgroup.com

***Attorneys for Plaintiffs
and the Putative Class***