1

**KANTROWITZ GOLDHAMER & GRAIFMAN PC**
Gary Graifman, *admitted pro hac vice*

2

Melissa Emert, *admitted pro hac vice*
135 Chestnut Ridge Road, Suite 200

3

Montvale, NJ 07645
Tel: (845) 356-2570

4

ggraifman@kgglaw.com
memert@kgglaw.com

5

6

**MIGLIACCIO & RATHOD LLP**
Nicholas Migliaccio, *admitted pro hac vice*

7

Jason Rathod, *admitted hac vice*
412 H St NE #302

8

Washington, D.C. 20002
Tel: (202) 470-3520

9

nmigliaccio@classlawdc.com
jrathod@classlawdc.com

10

11

**FEDERMAN & SHERWOOD**
William B. Federman, *admitted pro hac vice*

12

10205 N. Pennsylvania Avenue
Oklahoma City, OK 73120
Tel: (405) 235-1560

13

wbf@federmanlaw.com

14

*Proposed Class Counsel*
*Additional Proposed Class*

15

*Counsel on Signature Page*

16

UNITED STATES DISTRICT COURT

17

NORTHERN DISTRICT OF CALIFORNIA

18

19

MICHELLE SALINAS, RAYMEL

20

WASHINGTON, and AMANDA GORDON,
individually and on behalf of all others similarly

21

situated,

22

Plaintiffs,

23

v.

24

BLOCK, INC. and CASH APP INVESTING,
LLC,

25

Defendants.

26

27

28

Case No. 3:22-cv-04823

**DECLARATION OF MELISSA R. EMERT**
**IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY**
**APPROVAL OF CLASS ACTION SETTLEMENT**

I, MELISSA R. EMERT, declare under the penalties of perjury as follows:

1.      I am an attorney licensed to practice in the state of New York and a partner at the law firm Kantrowitz, Goldhamer & Graifman, P.C. ("KGG"). I have been admitted pro hac vice by the Court in this action.  I make this declaration in support of   Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement in the above-titled action (the "Action").  I have been involved in the prosecution of this action throughout and am familiar with the proceedings herein and have personal knowledge of the matters set forth herein.

2.      On August 23, 2022, Plaintiffs Michelle Salinas and Raymel Washington filed a class action lawsuit (the "*Salinas* Action") against Block, Inc. and Cash App Investing, LLC (collectively. "Defendants" or "Cash App"), asserting claims "for their failure to exercise reasonable care . . ." in connection with the data breach which was disclosed by Defendants in or around April 2022 (the "Data Breach"). Case No. 22-cv-04823, ECF No. 1, ¶ 1. Plaintiffs Salinas and Washington alleged their personally identifiable information ("Private Information") was compromised in the Data Breach, *id.* at ¶ 5, Defendants failed to implement reasonable measures to safeguard their Private Information, *id.* at ¶¶ 32, 48, Defendants made misrepresentations regarding the steps they took to protect their Private Information*, id.* at ¶¶ 33–35, and that they had been injured as a result. *See e.g. id.* at ¶¶ 12–13; 16–17. Plaintiffs Salinas and Washington brought eleven separate claims on behalf of themselves and a nationwide class of individuals "whose Private Information was compromised because of the Data Breach," as well as Illinois, California, and Texas subclasses. *Id*. at ¶ 94.

3.      After the *Salinas* Action was filed, counsel for Plaintiffs began to receive numerous inquiries from Cash App users about issues concerning the unauthorized loss of funds and potential fraud impacting their accounts.  After vetting hundreds of these individuals, Plaintiffs' counsel determined that there were security issues with the Cash App mobile financial platform.

4.    On November 22, 2022, a second action was filed against Defendants by Amanda Gordon against Defendants (the "*Gordon* Action) (Case No. 22-cv-06787), which focused on the security issues with the Cash App mobile application as well as the Data Breach.  Counsel for *Salinas* and *Gordon* agreed to work together in pursuit of their claims to obtain relief for Plaintiffs and the Class(es).

5.    Thereafter, counsel for *Salinas* and *Gordon* retained an expert in cyber security to delve into the security issues surrounding Cash App's mobile application.

6.    At the same time, counsel for Cash App indicated there may be an interest in exploring early settlement in both actions.

7.    As a result, and guided by Plaintiffs' Counsel's expert, Plaintiffs requested a myriad of information from Defendants relating to their data security. This informal discovery took place over a number of months.

8.    After engaging in informal discovery with Defendants, and after three (3) mediation sessions with highly respected JAMS mediator, Robert Meyer, in addition to many video conferences and telephone conferences in between those mediation sessions, the Parties have reached an agreement (hereafter, the "Settlement" or "Settlement Agreement"), to resolve claims asserted by each Plaintiff, resulting in the submission of the Settlement Agreement to this Court for approval.[1]

9.    Attached hereto as **Exhibit 1** is a true and accurate copy of the executed Settlement Agreement together with exhibits comprised of Exhibit A (proposed Email Summary Notice of Class Settlement ("Class Settlement Notice")); Exhibit B (proposed Long Form, Class Notice); Exhibit C (Class Settlement Claim Form).The Settlement presents a robust relief package and valuable outcome for the Settlement Class. The Settlement confers multiple benefits to the Class. The Settlement provides for equitable and monetary relief in the form of a $15 Million Common Fund to be used by

---

[1] Unless otherwise indicated herein, capitalized terms have the same meaning as set forth in the Settlement Agreement.

the Settlement Administrator to pay (a) Notice and Administrative Expenses; (b) Approved Class Members' Claims; (c) Taxes and Tax-Related Expenses; (d) Fee Award and Costs approved by the Court; and (e) Service Award Payments approved by the Court. Specifically, the Settlement provides:

(a)    **Reimbursement for Out-of-Pocket Losses.** All Settlement Class Members may submit a claim for reimbursement of Out-of-Pocket Losses. To receive reimbursement for Out-of-Pocket Losses, Settlement Class Members must submit a valid Claim Form that includes the following: (i) third-party documentation supporting the loss; and (ii) a brief description of the nature of the loss, if the nature of the loss is not apparent from the documentation alone. Third-party documentation can include receipts or other documentation not "self-prepared" by the Settlement Class Member that documents the costs incurred. Self-prepared documents such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but can be considered to add clarity or support other submitted documentation.  The Settlement Administrator shall have the sole discretion and authority to determine whether and to what extent documentation for Out-of-Pocket Losses reflects valid Out-of-Pocket Losses actually incurred.

(b)    **Reimbursement for Lost Time.** All Settlement Class Members may submit a claim for reimbursement of Lost Time up to three (3) hours at a rate of $25.00 per hour.  A claim for Lost Time may be combined with a claim for reimbursement for Out-of-Pocket Losses and Transaction Losses.

(c)    **Reimbursement for Transaction Losses.** All Settlement Class Members may submit a claim for reimbursement for Transaction Losses. A claim for reimbursement for Out-of-Pocket Losses may be combined with a claim for Lost Time and Transaction Loss.

To receive reimbursement for a Transaction Loss, a Settlement Class Member must submit a valid Claim Form that attests that the Settlement Class Member experienced an Unauthorized Account Event (as defined in Paragraph II.A.23 of the Settlement Agreement) during the period of four (4) years prior to the filing of the Salinas Complaint (which was filed on August 23, 2022) through the Notice Date. Settlement Class Members must also provide at least <u>one</u> of the following three items:

i. A copy of the notification the Settlement Class Member transmitted to Defendants during the same period, notifying Defendants of the Unauthorized Account Event which verifies the account name ($Cashtag) and the amount of the loss;

ii. A copy of the police report concerning the Unauthorized Account Event which verifies the amount of the loss made during the same period; or

iii. Documentation that the Settlement Administrator, in its sole discretion, determines suffices to demonstrate the occurrence of an Unauthorized Account Event during the period, which caused the monetary loss claimed.

(d)      **Pro Rata Adjustment to Approved Claims.** In the event that the Net Settlement Fund is not sufficient to make payment for all Approved Claims at the full amounts otherwise approved, then the value of the payments for the Approved Claims shall be reduced on a pro rata basis, such that the aggregate value of all payments for Approved Claims does not exceed the Net Settlement Fund. Alternatively, if the aggregate value of all Approved Claims is less than the Net Settlement Fund, each Settlement Class Member that submitted an Approved Claim shall receive a proportional share of the amount of the Net Settlement Fund that exceeds the aggregate value of all Approved Claims based on the percentage the Settlement Class Members' Approved Claim as compared to the aggregate value of all Approved Claims.

10.      The Settlement Agreement also provides for non-monetary benefits in the form of security measures ("Agreed Security Measures") implemented by Defendants. **Specifically,** Defendants represent that they have implemented the following security measures, which will benefit all Class Members, whether or not they submit a claim:

(a)      **Vulnerability Management.**  Defendants now maintain a program to recognize, understand, and mitigate the security risks associated with known vulnerabilities. This program includes operational and business metrics to monitor overall program health and analytics to facilitate trend identification.

(b)      **Infrastructure/Application Testing.** Defendants now maintain a multifaceted security program to test their systems and software, including:

i.    Training to prevent common coding vulnerabilities in software development processes by training developers annually in secure coding techniques and developing applications based on secure coding guidelines;

ii.    Security team dedicated to Cash App and Cash App Investing software and infrastructure;

iii.    Internal network vulnerability scans of Cash App's cloud environment on a daily basis to identify and remediate vulnerabilities according to their vulnerability management process;

iv.    PCI Approved Scanning Vendor (PCI ASV) to perform external vulnerability scans of Cash App's PCI DSS environment on a weekly basis to remediate vulnerabilities identified according to the vulnerability management process;

v.    Annual independent third-party penetration testing of Cash App's PCI DSS environment; and

vi.    A public bug bounty program.

(c)    **Threat Intelligence.**  Defendants now maintain a threat intelligence team responsible for developing pre-breach/preventative intelligence on threats and vulnerabilities.

(d)    **Third Party Attestation.**  Defendants shall annually conduct:

i.    Independent third-party SOC 2 Type II examination, regarding design and operating effectiveness of controls relevant to the Security, Availability, Processing Integrity, and Confidentiality trust service criteria;

ii.    Independent annual PCI DSS assessment covering data security requirements for protecting cardholder data processed, stored, or transmitted.

*See* Settlement Agreement § II (F).

11.    All costs of notice and administration of the Settlement will be paid out of the Settlement Fund. Settlement Agreement at § II.E.1. These costs are reasonable in light of the need to reach Class Members and process the claims. The Parties propose that Angeion Group serve as the Settlement Administrator. § II (I). Class Counsel considered six potential administrators, and received

a total number of fourteen bids in three rounds of highly competitive bidding. With each of the

potential settlement administrators, Class Counsel discussed the notice and distribution plans agreed

to in the Settlement, and received bids that considered combinations of print, media, and digital notice.

Class Counsel—who have collectively litigated hundreds of class actions to settlement—previously

have worked with Angeion on different matters at various points over the last two years. The

Settlement Administrator shall (i)  provide notification of the proposed settlement to the Settlement

Class Members as set forth in the Settlement Agreement ; (ii) create and host a website, publicly

accessible from the Notice Date until at least six months after the Effective Date, dedicated to provide

information related to the Action, including access to relevant publicly available court documents, the

settlement and the Settlement Agreement, the long-form notice of the settlement, and providing

Settlement Class Members with the ability to submit claims and supporting documentation for

compensatory relief; (iii) maintain a toll-free telephone number with live operators and a P.O. Box by

which Settlement Class Members can seek additional information regarding this Settlement

Agreement. As explained in the declaration from the Settlement Administrator filed herewith, this

multi-communication method is expected to reach at least 70% of the Class Members and it is the best

notice practicable. (Weisbrot Decl., ¶ 28.). The estimated not to exceed cap of $1,125,000, is

reasonable in light of the size of the class, outreach efforts, and processing of claims.

12.     The Settlement Fund is non-reversionary. To the extent any monies remain in the Net

Settlement Fund more than the stipulated period after the distribution of Settlement Payments, a

subsequent Settlement Payment will be made to all Claimants with Approved Claims who cashed or

deposited the initial payment they received.

13.     Under the terms of the Settlement, Defendants will provide the Agreed Security

Measures set forth above at ¶¶ 10(a) through (d). These include the referenced Vulnerability

Management; Infrastructure Application Testing; a Threat Intelligence team; Third Party Examination

and Attestation. Email notice will be sent to more than 80 million email accounts for Cash App

subscribers.  Pursuant to N.D. Guidelines ¶1(f), Plaintiffs' Counsel estimate, based on their experiences with recent settlements in other data breach cases and the input of the Settlement Administrator, that up to approximately 50,000 Class Members may submit qualified and documented transactional loss or out-of-pocket claims. Approximately 8 million class members in the aggregate had their data breached in the two data breaches which occurred.  Settlement Class Members need only submit a relatively simple claim form with basic questions about class membership. Settlement Agreement at §II(L)(2) and Exhibit C. Class Members may qualify for reimbursement for Out-of-Pocket Losses, Lost Time, or Transaction Losses. The Claim Form can be completed online, and Class Members have the option to print and mail the Claim Form to the Settlement Administrator. Settlement Agreement at § II(L)(2). This procedure is claimant-friendly, efficient, cost-effective, proportional and reasonable.

14.    The Consolidated Complaint also includes allegations of the second, smaller data breach which took place in 2023, which involved approximately 76,000 accounts, thus the Consolidated Complaint expands on the allegations that were included in the original complaint filed by Plaintiff Gordon, and asserts that Defendants generally failed to take appropriate steps to respond to user complaints of unauthorized funds transfers. The Settlement Class, which roughly tracks the class defined in the Consolidated Complaint, (*See* Consolidated Complaint, ECF 73 at ¶108) is defined as follows:

> All persons who are current or former customers of Defendants or any of Defendants' affiliates, parents, or subsidiaries and who had their Personal Information, Cash App account, or Cash App Investing account accessed or obtained without their authorization or who otherwise had unauthorized, unintended, or fraudulent withdrawals or transfers to or from, or alleged error in connection with, a Cash App or Cash App Investing account or any linked financial account in the period of four (4) years prior to the filing of the Salinas Complaint (which was filed on August 23, 2022) through the Notice Date.

> Excluded from the Settlement Class are (i) any judge or magistrate judge presiding over this Action, members of their staff, and members of their immediate families; (ii) the Released Parties; (iii) persons who properly execute and file a timely request for exclusion from the Settlement Class; (iv) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (v) counsel for Defendants; and (vi) the legal representatives, successors, and assigns of any such excluded persons.

15.     Plaintiffs' operative Consolidated Complaint (ECF. No. 73) alleges Defendants failed to take reasonable steps to safeguard customer information in connection with two data breaches, the first occurring in December 2021 and the second occurring in 2023. The breaches resulted in the unauthorized access to the PII of Cash App Investing customers, including Plaintiffs' and the Settlement Class Members' full names and Cash App brokerage account numbers. The Consolidated Complaint also contained allegations concerning the security vulnerabilities affecting the Cash App mobile application itself. Plaintiffs allege that because of Defendants' negligence, Plaintiffs and Class Members' PII have been compromised and their financial accounts, as well as accounts linked to their Cash App accounts similarly compromised. Specifically, Plaintiffs alleged negligence; violations of California Consumers' Legal Remedies Act, *Cal. Civ. Code* §§ 1750, *et seq.* (the "CLRA"); fraud by omission; deceit by concealment, *Cal. Civ. Code* §§ 1709 and 1710(3); negligent misrepresentation, *Cal. Civ. Code* §§ 1709 and 1710(2); breach of implied contract; breach of confidence; invasion of privacy; breach of fiduciary duty; and breach of the implied covenant of good faith and fair dealing.

16.     Plaintiffs' Counsel engaged in arms-length negotiations with Defendants' counsel, and Plaintiffs' Counsel were thoroughly familiar with the applicable facts, legal theories, and potential defenses. Although Plaintiffs and their counsel strongly believe in the merits of their claims, a favorable outcome was not guaranteed. Plaintiffs also recognized that they would face risks at class certification, summary judgment, and trial.

17.     Defendants vigorously deny Plaintiffs' allegations and assert that neither Plaintiffs nor the Class suffered any harm or damages. In addition, Defendants would no doubt present a vigorous defense at trial, and there is no assurance that the Class would prevail – or even if they did, that they would be able to obtain an award of damages significantly more than achieved here absent such risks. Thus, in the eyes of Plaintiffs' Counsel, the proposed Settlement provides the Class with an outstanding opportunity to obtain significant relief at this stage in the Action. The Settlement also abrogates the risks that might prevent the Class from obtaining any relief.

18.     Through the Settlement, Class Members have the opportunity to achieve a certain recovery with the benefit of a consumer-friendly procedure supervised by an experienced Settlement Administrator. Continued litigation carries considerable risk of a lesser recovery or none at all. To prevail at trial, Plaintiffs first would have to win their motion to certify a nationwide consumer class and would then have to maintain class certification through entry of judgment and overcome numerous substantive defenses. Even if Plaintiffs were to have certified a class and prevail at trial, fairly allocating a trial judgment would require some form of claims procedure to ensure adequate compensation of Settlement Class Members.

19.     Plaintiffs and their counsel, after taking into account the foregoing along with other risks and the costs of further litigation, are satisfied that the terms and conditions of this Agreement are fair, reasonable, adequate and equitable, and that a settlement of the litigation and the prompt provision of effective relief to the Settlement Class is in the best interest of the Settlement Class Members.

20.     Plaintiffs' counsel and Defendants' counsel conducted a thorough examination and investigation of the facts and law relating to the matters in the Action. As noted above, informal discovery focusing on the technical aspects of security and the methodology of the security issues raised was conducted in depth. The Parties participated in three all-day mediation sessions in 2023 on April 4, October 18, and November 15 with Robert A. Meyer, Esq. of JAMS, which, after lengthy further negotiations, ultimately resulted in the settlement memorialized in the Settlement Agreement.

21.     Here, the Settlement was negotiated by counsel with experience and expertise in prosecuting complex class actions. Plaintiffs' counsel are active practitioners who are highly experienced in class action, product liability, data breach and consumer fraud litigation. Based on their experience, Plaintiffs' counsel concluded that the Settlement provides exceptional results for the Class while sparing the Class from the uncertainties of continued and protracted litigation. Attached hereto as **Exhibits 2, 3** and **4** are the firm resumes of Plaintiffs' Proposed Class Counsel, their firms of Kantrowitz, Goldhamer & Graifman, P.C., Migliaccio & Rathod LLP and Federman & Sherwood.

22.      Plaintiffs' counsel has vigorously and competently pursued Class Members' claims. Plaintiffs and their counsel have adequately represented the Class as demonstrated through the arm's-length settlement negotiations that took place and the investigation they undertook. Moreover, Plaintiffs and their counsel have no conflicts of interests with the Class. Plaintiffs, like each absent Class Member, have a strong interest in proving Defendants' common course of conduct, and obtaining redress. In pursuing this litigation, Plaintiffs and their counsel have advanced and will continue to advance and fully protect the common interests of all members of the Class.

23.      Notice to the Class of the Settlement will be sent via email to all Settlement Class Members from whom Defendants have a valid email address for. This notice will accurately inform Class Members of the salient terms of the Settlement, the Class to be certified, attorney's fees, the date and location of the Final Approval Hearing, and the rights of all parties, including the rights of Settlement Class Members to file objections and to opt out of the Class. Additionally, the notice will provide information on how Class Members can object and opt out of the Class and to send those objections to the Court, information on how Class Members may access the case docket through the Court's Public Access to Court Electronic Records ("PACER"), and the contact information of Plaintiffs' counsel. The Parties in this case have created and agreed to provide notice that will satisfy both the substantive terms and manner of distribution requirements of Rule 23 and due process. *See* Exs. A and B to the Settlement Agreement. There are approximately 15 to 55 million Cash App subscribers at any time during the Class Period.  Cash App will provide the universe of emails they have for subscribers, which equals more than 80 million email notices. Such notice will alert virtually all Cash App subscribers during the class period about the terms of the Settlement and the opportunity to file a claim for a loss. At this time the number of subscribers who will assert the occurrence of a loss is unknown by counsel for the parties. However it is estimated to be a fraction of the approximately 55 million subscribers.  As noted above, approximately 8 million Class members suffered the data breach.

24.      To notify those Settlement Class Members Defendants do not have email addresses for,

the claims administrator will administer a robust social media and advertisement campaign targeted to reach potential Settlement Class Members.

25.    The information requested by N.D. Cal. Guidelines ¶ 11 regarding past distributions in comparable class settlements is provided herein below.  Class Counsel submits that the Settlement here presents a robust relief package and valuable outcome for the Settlement Class.  Class Counsel do not, however, believe that there are any closely comparable class settlements because this is not simply a data breach action involving unauthorized access to PII, but also involves allegations that the Cash App mobile application itself was insecure, that numerous users experienced unauthorized transactions, that such users reported the unauthorized transactions to Defendants, and that Defendants failed to take appropriate steps to respond to those reports.  Class Counsel is not aware of any other class action that includes that set of allegations.

26.    While not a perfect comparison, Class Counsel believes that the closest comparable cases are traditional data breach cases involving unauthorized access to PII.  During the Class Period, the monthly number of active transacting Cash App accounts ranged from approximately 15 to 55 million.  Defendants will provide the universe of available email addresses they identify for Cash App and Cash Investing users during the Class Period, which is expected to result in more than        80 million email notices. Class Counsel expects that such notice, along with the publication notice called for under the Agreement, will alert virtually all Cash App users during the class period about the terms of the settlement and the opportunity to file a claim for a loss. At this time the number of users who will assert the occurrence of a loss is unknown by counsel for the parties. However it is estimated to be a small fraction of the total number of users during the Class Period. Class Counsel also notes that the comparison set forth in the chart does not account for the non-monetary benefits that provide substantial security safeguards and monitoring that promote resilience of Defendant's cybersecurity, further bolstering protection of Class Members' accounts and PII.

| Case Title | Estimated No. of Class Members | Settlement Fund | Amount Per Class Member |
|---|---|---|---|
| ***Proposed Settlement*** | **8.2M** | **$15M** | **$1.83** |
| *Target Data Breach Security Litigation* | 97.5M | $10M | $0.10 |
| *LinkedIn User Privacy Litig.* | 6.4M | $1.25M | $0.20 |
| *Home Depot Customer Data Breach Litig.* | 40M | $13M | $0.33 |
| *Yahoo! Inc. Customer Data Breach Litig.* | 194M | $117.5M | $0.61 |
| *Adlouni v. UCLA Health Systems Auxiliary, et al.* | 4.5M | $2M | $0.44 |
| *Atkinson v. Minted* | 4.1M | $5M | $1.22 |
| *Experian Data Breach Litig.* | 16M | $22M | $1.37 |
| *Anthem Data Breach Litig.* | 79.2M | $115M | $1.45 |
| *Equifax Data Security Breach Litig.* | > 147M | $380.5M | $2.59 |
| *21st Century Oncology Customer Data Security Breach Litig.* | 2.2M | $7.85M | $3.57 |
| *Premera Blue Cross Data Breach Litig.* | 8.86M | $32M | $3.61 |

27.    Plaintiffs' counsel, prior to the Final Approval Hearing, and on or before the date set forth in the Preliminary Approval Order, will make their application for an award of the payment of Attorneys' Fees and Expenses in the amount of twenty-five percent (25%) of (i) the $15 million non-reversionary common fund; and (ii) of the approximately $5 million of value provided to the Class through remedial relief that the Settlement addresses in the form of agreed-upon security measures and protocols. Under Ninth Circuit standards, it is appropriate for a District Court to analyze an attorneys' fee request and issue an award either based on (1) by making an award as a percentage of the total benefit made available to the settlement class, including costs, fees, and injunctive relief or (2) the "lodestar" method.

28.     Plaintiffs' Counsel's intended fee request is a reasonable percentage of the total benefit made available to the class. When determining the value of the settlement, courts consider both the monetary and non-monetary benefits conferred under the settlement terms. In the Ninth Circuit, the benchmark for an attorney fee is 25% of the total settlement value, including the monetary and non-monetary recovery. *See Six Mexican Workers v. Arizona Citrus Workers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *see also Glass*, 2007 WL 221862, at *14 ("The Ninth Circuit has repeatedly held that 25% of the gross settlement amount is the benchmark for attorneys' fees awarded under the percentage method . . .").

29.     Here, the value of the monetary portion of the Settlement Benefits made available to the Settlement Class is easily measurable and is a $15 million common fund. (Settlement Agreement, § II (E)(1)). In addition, Plaintiffs estimate that the value of the non-monetary relief portion of the Settlement, *e.g.*, the agreed-upon security measures, is approximately $5 million. Thus, the requested fee of $5 million equals 25% of the total Settlement value estimated at approximately $20 million. Plaintiffs' Counsel will file the actual request for an award of fees and reimbursement of expenses under the designated schedule upon entry of the order granting preliminary approval. However, it is appropriate to generally discuss the requested fees anticipated at this juncture. Plaintiffs' Counsel's requests in addition to reasonable attorneys' fees, includes reimbursement of out-of-pocket expenses incurred in connection with the prosecution of this Action. Plaintiffs' Counsel is typically entitled to reimbursement of all reasonable out-of-pocket expenses and costs in prosecution of the claims and in obtaining a settlement. *See Vincent v. Hughes Air West*, 557 F.2d 759, 769 (9th Cir. 1977).

30.     Plaintiffs' Counsel point out that counsel bore considerable risk in litigating this case wholly on a contingent basis and advancing all costs. Since Plaintiffs' counsel's work is primarily focused on contingent-fee class action cases, it does not get paid in every case. Further, Plaintiffs took on substantial risk, most importantly the risk of publicity and notoriety. Plaintiffs and their counsel

have not yet received any compensation for their work on this case or for the out-of-pocket expenses they have incurred (for experts, filing fees, etc.).

31.     Plaintiffs' Counsel also anticipate significant work continuing through the preliminary approval process, the notice period and filing of final approval papers; communicating directly with Class Members; addressing issues raised by Class Members; coordinating closely with the claims administrator; addressing objections, if any; preparing and filing final approval papers, preparing for and attending the final approval hearing, addressing deficiencies in various claims; preparing for and addressing the informal claims appeals process for denied claims; addressing and litigating any appeals, if any.  Plaintiffs' Counsel submit that, under Ninth Circuit law, the request for an award of legal fees may include the anticipated time for future work which is required.  *See, Hanlon v. Chrysler Corp.,* 150 F.2d 1011, 1029-30 (9th Cir. 1998).

32.     Under the lodestar approach, "[t]he lodestar (or touchstone) is produced by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate." *Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19, 26 (2000); *see also Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016)

Plaintiffs' counsel's efforts to date have included, without limitation:

- Pre-filing investigation;

- Drafting and filing two class action complaints;

- Drafting and filing a motion for consolidation and motion for appointment of interim class counsel;

- Drafting and filing the consolidated complaint;

- Interviewing hundreds of putative class members;

- Drafting and filing case management conference statements and case management stipulations;

- Propounding requests for pre-mediation informal discovery and information and reviewing such documents and information produced by Defendants;

- Drafting a comprehensive mediation statement and participating in three full day mediations before Robert Meyer of JAMS;

- Negotiating and/or drafting the Settlement Agreement along with corresponding documents, including the claim form and notice forms;

- Drafting this motion for approval and supporting documents, including a proposed preliminary approval order and a proposed final judgment;

- Retaining a consulting expert regarding Defendants' security measures; and

- Holding a lengthy and thorough bidding process for claims administrators.

Before the Final Approval Hearing, Plaintiffs' Counsel's efforts will also include, without limitation:

- Preparing for and appearing at the Preliminary Approval Hearing;

- Reviewing and responding to correspondence from Class Members;

- Supervising the work of the Settlement Administrator; and

- Researching and drafting a reply memorandum and opposing objections, if any.

33.      Finally, the Court should approve the service awards for class representatives. Counsel for Plaintiffs, prior to the Final Approval Hearing, and on or before the date set forth in the Preliminary Approval Order, will make their application for a fair and reasonable Service Award for the three class representatives who agreed to act as Plaintiffs in the case. Accordingly, at the Final Approval hearing, Plaintiffs will be seeking approval of a $2,500 Service Award to each Class Representative as it is just, fair and reasonable.

34.     The last step in the settlement approval process is the Final Approval Hearing at which the Parties will seek final approval of the proposed Settlement. At the Final Approval Hearing, proponents of the Settlement may explain and describe its terms and conditions and offer argument in support of final approval of the Settlement. Also, Class Members, or their counsel, may be heard in support of or in opposition to final approval of the Settlement. Plaintiffs request the Court issue the following schedule for establishing dates for mailing notices, submitting timely exclusions, and for the Final Approval Hearing:

| EVENT | DATE |
|---|---|
| Notice Date (U.S. Mail and email) | Within **45 Days** from Preliminary Approval Order |
| Deadline to Submit Claim Forms | **45 Days** from Notice Date |
| Deadline to Submit Motion for Attorneys' Fees, Costs and Service Payments | **40 Days** from Preliminary Approval Order |
| Deadline to Object and/or Comment on the Settlement | **35 Days** from Notice Date |
| Deadline to Submit Request for Exclusion | **35 Days** from Notice Date |
| Final Approval Hearing | To be Determined |

35.     Annexed hereto as **Exhibit 5** is a [Proposed] Order Granting Preliminary Approval and Approving Notice Plan.

Declared and executed under the penalties of perjury this 3rd day of March, 2024.


*/s/ Melissa R. Emert*
MELISSA R. EMERT

17