Gary S. Graifman (*Pro Hac Vice*)
Melissa Emert (*Pro Hac Vice*)
**KANTROWITZ, GOLDHAMER,**
**& GRAIFMAN, P.C.**
135 Chestnut Ridge Rd. Suite 200
Montvale, NJ 07645
(201) 391-7000; Fax (201) 307-1086
ggraifman@kgglaw.com
memert@kgglaw.com

Nicholas Migliaccio (*Pro Hac Vice*)
Jason Rathod (*Pro Hac Vice*)
**MIGLIACCIO & RATHOD LLP**
412 H St NE #302
Washington, D.C. 20002
(202) 474-9111; Fax: (202) 800-2730
nmigliaccio@classlawdc.com
jrathod@classlawdc.com

William B. Federman (*Pro Hac Vice*)
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Avenue
Oklahoma City, OK 73120
(405) 235-1560; Fax: (405)-239-2112
wbf@federmanlaw.com

*Co-Lead Counsel for the Proposed Class*

[Additional Counsel Listed on the Signature Page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| MICHELLE SALINAS, RAYMEL WASHINGTON, and AMANDA GORDON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BLOCK, INC. and CASH APP INVESTING, LLC,<br><br>Defendants. | Hon. Magistrate Judge Sallie Kim<br><br>Case No.: 3:22-cv-04823<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS, AND SERVICE AWARDS**<br><br>DATE: December 16, 2024<br>TIME:  9:30 A.M.<br>CTRM: |

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on December 16, 2024 at 9:30 a.m., or as soon thereafter as the matter may be heard of the above-captioned case before the Hon. Magistrate Judge Sallie Kim, Plaintiffs Michelle Salinas, Raymel Washington, and Amanda Gordon (collectively, "Plaintiffs"), will and hereby do move for an Order, consistent with the terms of the Class Action Settlement Agreement in this case, awarding Class Counsel's attorneys' fees, reimbursing Class Counsel's expenses, and awarding a Service Award of $2,500.00 to each of the Class Representatives ($7,500.00 total) .

Plaintiffs' Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Joint Declaration of Melissa Emert, Nicholas Migliaccio, and William Federman, the Declarations of Gary S. Graifman, William B. Federman, Nicholas A. Migliaccio, David A. Goodwin, Scott D. Hirsch and Robert Green, the Declarations of Class Representatives Raymel Washington and Amanda Gordon, the Declaration of Mary T. Frantz, the Class Action Settlement Agreement and Release (the "Settlement") previously filed with the Court (ECF 76-2), and all papers filed in support thereof, the argument of counsel at the hearing of this Motion, all papers and records on file in this matter, and such other matters as the Court may consider.

Dated:  August 15, 2024

*/s/ Nicholas A. Migliaccio*
Nicholas A. Migliaccio (admitted *pro hac vice*)
Jason S. Rathod (admitted *pro hac vice*)
**MIGLIACCIO & RATHOD LLP**
412 H St NE, Suite 302
Washington DC 20002
Telephone (202) 470-3520
nmigliaccio@classlawdc.com
jrathod@classlawdc.com

---

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Melissa R. Emert (admitted *pro hac vice*)
Gary S. Graifman (admitted *pro hac vice*)
**KANTROWITZ, GOLDHAMER**
**& GRAIFMAN, P.C.**
135 Chestnut Ridge Road, Suite 200
Montvale, NJ 07645
Tel: (845) 356-2570

William B. Federman (admitted *pro hac vice*)
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
Ph: 405-235-1560

Daniel E. Gustafson (admitted *pro hac vice*)
David A. Goodwin (admitted *pro hac vice*)
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Tel: (612) 333-8844
dgustafson@gustafsongluek.com
dgoodwin@gustafsongluek.com

Scott. D Hirsch (admitted *pro hac vice*)
SCOTT HIRSCH LAW GROUP
6810 N. State Road 7
Coconut Creek, FL 33073
(561) 569-7062
scott@scotthirschlawgroup.com

***Proposed Class Counsel***

PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS, AND
SERVICE AWARDS

## **TABLE OF CONTENT**

I.    INTRODUCTION .................................................................................................. 1

II.   BACKGROUND .................................................................................................. 3

    A.    The Data Breach and the Procedural History of this Action ........................... 3

    B.    Settlement Negotiations and Mediation ............................................................ 5

    C.    Preliminary Approval ......................................................................................... 6

    D.    Settlement Administration .................................................................................. 7

III.  ARGUMENT ....................................................................................................... 7

    A.    The Court Should Approve the Application for Award of Attorneys' Fees ...... 7

    B.    The Court Should Use the Percentage Method to Calculate Reasonable
            Attorneys' Fees .................................................................................................. 7

    C.    The Relevant Factors Support Class Counsel's Requested Fee Award ............. 9

          1.    Class Counsel Achieved an Exceptional Result for the Class............. 9

                i.    The Settlement Value is Currently Value Is Currently Valued at
                      $20 Million and Is Likely to Exceed This Amount .................. 9

                ii.   The Value of Cash App's Business Practice and Security
                      Adjustments is $5 Million ...................................................... 10

                iii.  The Value Ascribed to Cash App's Remedial Measures Is
                      Conservative ........................................................................... 11

          2.    Class Counsel Undertook Substantial Risk in this Litigation ............ 13

          3.    The Settlement Required Skill and High-Quality Work..................... 14

          4.    Class Counsel Worked on a Fully Contingent Basis .......................... 15

          5.    The Requested Fee Award Is Not the Product of Collusion ............... 16

          6.    The Requested Amount Is Comparable to Attorneys' Fees Awarded in
                Other Cases ........................................................................................ 17

    D.    Lodestar Cross-Check Confirms the Reasonableness of the Requested Fees 18

          1.    The Number of Hours Claimed Is Reasonable.................................. 18

- iii -

PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS, AND
SERVICE AWARDS

2.    The Hourly Rates Are Reasonable ......................................... 21

3.    A Positive Multiplier Is Justified ......................................... 22

E.    Class Counsel are Entitled to Reimbursement of Litigation Costs ................ 24

F.    The Court Should Approve the Service Awards ............................. 25

IV.    Conclusion ................................................................................. 25

PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS, AND
SERVICE AWARDS

## TABLE OF AUTHORITIES

*Cases*

*Asghari v. Volkswagen Grp. Of Am., Inc.*,
  2015 WL 12732462 (C.D. Cal. May 29, 2015) ................................................................. 20

*Ayala v. AT&T Mobility Servs., LLC*,
  No. 2:18-cv-08809-FLA (MRWx), 2024 U.S. Dist. LEXIS 48470 (C.D. Cal. Mar. 18, 2024) ...... 8

*Bebchick v. Wash. Metro. Area Transit Comm'n*,
  805 F.2d (D.C. Cir. 1986) ............................................................................................ 12

*Brown v. Google LLC*,
  No. 4:20-cv-03664 (N.D. Cal. July 15, 2022) ................................................................. 21

*Camacho v. Bridgeport Fin., Inc.*,
  523 F.3d 973 (9th Cir. 2008) ....................................................................................... 21

*City of Burlington v. Dague*,
  505 U.S. 557 (1992) .................................................................................................... 23

*Craft v. County of San Bernardino*,
  624 F. Supp. 2d 1113 (C.D. Cal. 2008) ........................................................................ 22

*G.F. v. Contra Costa Cnty.*,
  No. 3:13-cv-03667, 2015 WL 4606078 (N.D. Cal. July 30, 2015) .................................... 16

*Hammond v. The Bank of N.Y. Mellon Corp.*,
  No. 08 Civ. 6060, 2010 WL 2643307 (S.D.N.Y. June 25, 2010) ....................................... 13

*Hanlon v. Chrysler Group*,
  150 F.3d 1011 (9th Cir. 1998) ................................................................................ 8, 20

*Harris  v. Marhoefer*,
  24  F.3d 16 (9th Cir. 1994) .......................................................................................... 24

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ...................................................................................................... 7

*Home Depot*,
  2016 WL 11299474 (N.D. Ga. Aug. 23, 2016) ............................................................... 17

*In re Activision Sec. Litig.*,

PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS, AND
SERVICE AWARDS

723 F. Supp. 1373 (N.D. Cal. 1989) ....................................................... 8

*Troy v. Aegis Senior Cmtys. LLC*,
No. 16-cv-03991-JSW, 2021 U.S. Dist. LEXIS 248899 (N.D. Cal. Aug. 23, 2021) ........................12

*In re American Apparel, Inc. S'holder Litig.*,
No. 10-cv-06352 MMM (JCGx), 2014 WL 10212865 (C.D. Cal. 2014)....................................14

*In re Anthem, Inc. Data Breach Litig.*,
No. 15-MD-02617-LHK, 2018 WL 3960068 (N.D. Cal. Aug. 17, 2018) .................. 12, 13, 17

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F. 935 (9th Cir. 2011).................................................................. 7, 16, 17, 21

*In re Checking Account Overdraft Litig.*,
No. 1:09- MD-02036-JLK, 2013 WL 11319243 (S.D. Fl. Aug. 2, 2013) ....................12

*In re HP Inkjet Printer Litig.*,
716 F.3d 1173 (9th Cir. 2013)............................................................... 8

*In re Nasdaq Market-Makers Antitrust Litig.*,
187 F.R.D. 465 (S.D.N.Y. 1998) ...........................................................22

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...........................................*Passim*

*In re Solara Medical Supplies Data Breach Litig.*,
No. 3:19-cv-02284, ECF No. 150 (S.D. Cal., Sept. 12, 2022)........................12

*In re Target Corp. Customer Data Security Breach Litig.*,
No. 14-md-02522, 2015 WL 7253765 (D. Min. Nov. 17, 2015)............................ 17

*In re United Energy Corp. Solar Power Modules Tax Shelter Inv. Sec. Litig.*,
No. CV-87-3962, 1989 WL 73211 (C.D. Cal. Mar. 9, 1989) ............................24

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
No. 3:15-md-02672, 2017 WL 1047834 (N.D. Cal. Mar. 17, 2017) ....................22

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
19 F.3d 1291 (9th Cir. 1994) ........................................................ 15, 24

*Jarrell v. Amergas Propane, Inc.*,
No. 16-CV-01481-JST, 2018 WL 1640055 (N.D. Cal. Apr. 5, 2018)........................17

- vi -

*Kerr v. Screen Extras Guild, Inc.*,
  526 F.2d 67 (9th Cir. 1975) ..................................................................23

*Kiser v. Huge*,
  517 F.2d 1237 (D.C. Cir. 1974)............................................................20

*Knight v. Red Door Salons, Inc.*,
  No. 08-cv- 1520 SC, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009)..........................17

*Krottner v. Starbucks Corp.*,
  406 F.App'x 129 (9th Cir. 2010) ............................................................23

*Lim v. Transforce, Inc.*,
  No. LA CV19-04390 JAK, 2022 WL 17253907 (C.D. Cal. Nov. 15, 2022)................16

*Linney v. Cellular Alaska P'ship*,
  No. C-96-3008 DLJ, 1997 WL 450064 (N.D. Cal. July 18, 1997) ...................... 9

*Lusk v. Five Guys Enters. LLC*,
  No. 1:17-cv-00762-AWI, 2022 WL 4791923 (E.D. Cal. Sep. 30, 2022) ....................16

*Maley v. Del Global Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002) .....................................................22

*Maree v. Deutsche Lufthansa AG*,
  No. 8:20-cv-00885, 2022 WL 5052582 (C.D. Cal. Sep. 30, 2022) .....................16

*McCoy v. Health Net, Inc.*,
  569 F. Supp. 2d 448 (D.N.J. 2008)........................................................12

*McKinney-Drobnis v. Oreshack*,
  16 F.4th 594 (9th Cir. 2021) ..............................................................16

*Miller v. Ghirardelli Chocolate Co.*,
  No. 12-cv-04936, 2015 WL 758094 (N.D. Cal. Feb. 20, 2015)................................ 9

*Moore v. James H. Matthews & Co.*,
  682 F.2d 830 (9th Cir. 1982) .............................................................18

*Munoz v. Big Bus Tours Ltd.*,
  No. 18-05761, 2020 WL 13533045 (N.D. Cal. Feb. 12, 2020).............................. 9

*Purdy v. Sec. Sav. & Loan Asso.*,

PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS, AND
SERVICE AWARDS

727 F. Supp. 1266 (E.D. Wis. 1989) .................................................................... 14

*Rates Tech., Inc. v. Speakeasy, Inc.,*
685 F.3d 163 (2d Cir. 2012) ................................................................................ 14

*Reyes v. Experian Info. Sols., Inc.,*
No. 8:16-cv-00563-SVW-AFM, 2021 U.S. Dist. LEXIS 262980 (C.D. Cal. May 4, 2021) ........21

*Rodriguez v. W. Publ'g Corp.,*
563 F.3d 948 (9th Cir. 2009) ...............................................................................25

*Safier v. Western Digital Corp.,*
2006 WL 8459585 (N.D. Cal. July 6, 2006) .........................................................20

*Smith v. Pac. Pers. Servs.,*
No. 17-cv-03594-SK, 2018 U.S. Dist. LEXIS 246972 (N.D. Cal. Oct. 11, 2018) ..................... 7

*Staton v. Boeing Co.,*
327 F.3d 938 (9th Cir. 2003) ........................................................................ 12, 24

*Stetson v. Grissom,*
821 F.3d 1157 (9th Cir. 2016) ...................................................................... 17, 22

*Swain v/ Anders Group, LLC,*
2022 WL 5250139 (E.D. Cal. Oct. 6, 2022) ........................................................16

*United Fed. of Postal Clerks, AFL-CIO v. U.S.,*
61 F.R.D. 13 (D.D.C. 1973) ...............................................................................21

*Viceral v. Mistras Grp., Inc.,*
No. 15-cv-02198, 2017 WL 661352 (N.D. Cal. Feb. 17, 2017) ............................25

*Vincent v. Hughes Air W., Inc.,*
557 F.2d 759 (9th Cir. 1977) ...............................................................................24

*Vinh Nguyen v. Radient Pharm. Corp.,*
No. 11-cv-00406, 2014 WL 1802293 (C.D. Cal. May 6, 2014) ..............................8

*Vizcaino v. Microsoft Corp.,*
290 F.3d 1043 (9th Cir. 2002) ....................................................................*Passim*

*Wershba v. Apple Computer,*
91 Cal. App. 4th 224 (2001) ...............................................................................22

- viii -

PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS, AND
SERVICE AWARDS

*Wing v. Asarco,*

   114 F.3d 986 (9th Cir. 1997)...................................................................15

*Wininger v. SI Mgmt. L.P.,*

   301 F.3d 1115 (9th Cir. 2002)..............................................................24


**Codes**

California Consumers' Legal Remedies Act, Cal. Civ. Code §§ 1750, et seq...............................4

Cal. Civ. Code §§ 1709 and 1710(3) ...................................................4

Cal. Civ. Code §§ 1709 and 1710(2) ...................................................4


**Other Authorities**

*Manual for Complex Litigation*, § 27.71, 336 (4th ed. 2004) ....................................7

PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS, AND
SERVICE AWARDS

## I.    INTRODUCTION

The Court preliminarily approved the proposed Settlement of this action, and the Settlement Administrator has disseminated notice to Class Members in accordance with the Notice Plan.[1] Now, Plaintiffs respectfully request an award of attorneys' fees of Five Million Dollars ($5,000,000.00) and, $76,696.58 in necessary litigation expenses, and a service award of $2,500.00 to each of the Class Representatives ($7,500.00 in total) in accordance with the terms of the preliminarily approved Settlement between Plaintiffs and Defendants Block, Inc. and Cash App Investing, LLC. ("Cash App").

After nearly two years of hard-fought litigation, including three (3) full-day mediation sessions over the span of several months with additional telephone calls and exchanges of data with mediator Robert A. Meyer, Esq. of JAMS, the parties reached an exceptional Settlement that compensates Class Members for their losses and protects them against future risks. Based on the claims processed to date, the Settlement is valued at more than $20 million. As explained in greater detail below, this includes the $15 million non-reversionary Settlement Fund, and the $5 million value of Defendants' changes in security practices resulting from this litigation.[2] The requested attorney's fees ($5 million) amount to 25% of the value of the current settlement value, thus conforming to the benchmark established in the Ninth Circuit.

The requested fees are fair and reasonable considering Class Counsel's lodestar.[3] Over nearly two (2) years of contested litigation, Plaintiffs' counsel devoted more than 2,644.30 hours and incurred a conservatively calculated, collective lodestar of $1,874,297.30 and expenses of $76,696.58 to secure the relief for the class. The time spent by Plaintiffs' Counsel in this litigation included investigating the initial claim for the data breach claims; investigating the claims based

---

[1] Unless otherwise noted, capitalized terms have the meaning ascribed to them in the Settlement Agreement. (ECF No. 76-2).

[2] For a full explanation of the Settlement's value, see *infra*, Section III.C.1.i.

[3] For ease of reference, the term "Class Counsel" as used herein includes the three co-lead firms, Kantrowitz, Goldhamer & Graifman, P.C., Migliaccio & Rathod LLP and Federman & Sherwood, together with the other class counsel involved in the case, being the firms of Gustafson & Gluek PLLC, Scott Hirsch Law Group and Liaison Counsel, Green & Noblin, P.C.

on operational security issues with the Cash App application and platform; interviewing and vetting the various Plaintiffs; speaking with a multitude of potential class members who had a breach or hacking event in their account; preparing the initial complaints and Consolidated Complaint; obtaining discovery pursuant to Fed. R. Evid., Rule 408; engaging in multiple mediation sessions with an experienced class action mediator, Robert A. Meyer; consolidating the filed cases before the Court and seeking the appointment of Class Counsel; researching, drafting, and amending the consolidated complaint on two different occasions to survive Defendants' challenges to the complaints; meeting with and conferring with the Multi-State Attorney General Task Force; compiling and supplying information requested by the Attorney General Task Force; preparing a request for Proposal for multiple claims administration firms; interviewing and retaining a cyber security expert; vetting and obtaining multiple rounds of bids from the various claims administration firms; working with the selected firm to prepare the Notice program and claims documents; preparing, finalizing and filing the Preliminary Approval documents and negotiating an extremely favorable Settlement for the Class.

Further, the Class Settlement Notices are just being disseminated. Class Counsel and their staffs are expected to devote additional time, estimated at more than approximately 1000 hours, as they work to secure final approval of the Settlement, litigate any appeals, assist the numerous Class Members with navigating through the claims process, address any objections and finalize the settlement through final approval. The 1,000 hours of future time estimate is equally divided between attorney and paralegal time with a blended rate of $575.00 per hour, totaling an additional lodestar amount of $575,000.00. If that $575,000 is considered (as it should be, especially as at Final Approval much of it will have been incurred), that results in a combined lodestar on the part of Class Counsel of $2,449,297.30. *See* Joint Declaration of Class Counsel in Support of Motion for Award of Attorneys' Fees, Reimbursement of Expenses and Service Award filed concurrently herewith ("Jt. Decl.") at ¶69.

The requested fee award represents a lodestar multiple of 2.7, which is fair and reasonable considering the significant risks Class Counsel faced, the complexity of the issues presented, and

PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS, AND SERVICE AWARDS

the results and benefits achieved. If the future time to be incurred is included in the calculus, the requested fee award represents a multiple of approximately 2.0.

Plaintiffs similarly request the Court award costs in the amount of $76,696.58, which reflect the reasonable costs necessary to pursue this litigation and secure the Settlement. The relevant factors support the requested award.

Class Counsel also respectfully request the Court to award Service Awards of $2,500 to each of the three (3) Class Representatives for a total of $7,500. As explained in their declarations submitted in support of this Motion, each Class Representative did everything in their power to represent the best interests of the Class and devoted a significant amount of time communicating with attorneys, gathering evidence, reviewing and approving the complaints, responding to informal discovery, and ultimately reviewing, approving, and executing the Settlement Agreement. No Settlement would have been possible without their vital role.

## II.    BACKGROUND

### A.    The Data Breach and the Procedural History of this Action

Plaintiffs' operative Consolidated Complaint ("CC"), ECF. No. 73, alleges that Defendants failed to take reasonable steps to safeguard customer information in connection with two data breaches, the first occurring in December 2021 and the second occurring in 2023. The breaches resulted in the unauthorized public release of the PII of Cash App Investing customers, including Plaintiffs' and the Settlement Class Members' full names and Cash App brokerage account numbers. The CC also alleged that there were significant security vulnerabilities affecting the Cash App mobile application itself. Plaintiffs alleged that because of Defendants' negligence, Plaintiffs and Class Members' PII has been compromised and their financial accounts, as well as accounts unrelated to Cash App, are not secure, and were subject to unauthorized transactions. As a result, Plaintiffs further alleged that potential Class Members' accounts were accessed without authorization and/or used by unauthorized actors, Class Members had money taken from their accounts, stolen funds were not refunded or were only partially refunded, and data associated

with Cash App accounts was used in various unauthorized ways. Plaintiffs further alleged that Defendants failed to respond appropriately to reports of these issues.

On August 23, 2022, Plaintiffs Salinas and Washington filed a Class Action Complaint asserting claims against both Block and CAI "for their failure to exercise reasonable care . . . in connection with [the Data Breach]." Case No. 22-cv-04823, ECF No. 1, ¶ 1. Plaintiffs Salinas and Washington allege that their Private Information was compromised in the Data Breach, *id.* at ¶ 5, that Defendants failed to implement reasonable measures to safeguard their Private Information, *id.* ¶¶ 32, 48, that Defendants made misrepresentations regarding the steps they took to protect their Private Information, *id.* ¶¶ 33–35, and that Plaintiffs and the Class have been injured as a result. *See e.g. id.* ¶¶ 12–13,16–17. Plaintiffs Salinas and Washington asserted eleven (11) separate claims and sought to represent a nationwide class of individuals "whose Private Information was compromised because of the Data Breach," as well as Illinois, California, and Texas subclasses. *Id.* ¶ 94.

Specifically, Plaintiffs alleged negligence; violations of California Consumers' Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* (the "CLRA"); fraud by omission; deceit by concealment, Cal. Civ. Code §§ 1709 and 1710(3); negligent misrepresentation, Cal. Civ. Code §§ 1709 and 1710(2); breach of implied contract; breach of confidence; invasion of privacy; breach of fiduciary duty; and breach of the implied covenant of good faith and fair dealing. *See* Consolidated Complaint, ECF No. 73.

On November 2, 2022, Plaintiff Gordon filed a separate class action complaint concerning the same Data Breach noted above but also alleged claims against both Block and CAI based on the security vulnerabilities affecting the Cash App mobile application itself. Case No. 22-cv-06787, ECF No. 1, ¶ 4. Plaintiffs Gordon alleged that her Private Information was compromised as a result. *Id.* ¶¶ 14,16,18. Like Plaintiffs Salinas and Washington, Plaintiff Gordon asserted that Defendants failed to implement reasonable measures to safeguard her Private Information, *id.* ¶¶ 4, 40–54, that Defendants made misrepresentations regarding the steps they took to protect her Private Information, *id.* ¶¶ 8, 27–28, 124–26, and that she had been damaged as a result, *id.* ¶¶

- 4 -

14–15, 65. She sought to represent a nationwide class of "current or former customers . . . who have had their [Private Information] compromised as a result of Defendants' negligent security . . .," as well as a Texas subclass. *Id.* ¶ 70.

Plaintiff Gordon's opposition to consolidation, filed in December 2022, was withdrawn following extensive conversations and exchanges of information between the Parties. These discussions led to a determination that the Salinas Action and the Gordon Action stem from Defendants' pattern and practice of failing to adequately safeguard customer information and funds. As a result, Plaintiffs Gordon, Salinas, and Washington, through their counsel, filed for consolidation on December 21, 2023 and appointment of interim lead class counsel. The operative Consolidated Complaint was filed on February 9, 2024.

Plaintiffs' Counsel and Defendants' Counsel conducted a thorough examination and investigation of the facts and law relating to the matters in the Litigation.

**B.    Settlement Negotiations and Mediation**

The Parties engaged in extensive, arms-length negotiations over the course of many months, including three full-day mediation sessions in 2023 on April 4, October 18, and November 15 with Robert A. Meyer, Esq. of JAMS. (*See* Jt. Decl. ¶ 27).

During the mediation, Plaintiffs' counsel compiled for defense counsel a compendium of scores of individual communications from Cash App customers relating to breaches, unauthorized withdrawals or unauthorized transactions they claimed occurred.

Prior to each mediation session, the parties prepared comprehensive mediation briefs, exchanged information and legal arguments, and commenced mediation with Mr. Meyers fully prepared for each of the mediation days. Although progress was made at the initial mediation sessions, the case did not settle at the initial mediation, and the parties continued negotiations directly and through the mediator while continuing to present arguments to each other. (*Id.*) The parties reported the status of their negotiations to the Court on multiple occasions, and the Court granted their request to stay the case, including the then-pending motion to dismiss to allow those negotiations to continue. (Dkt. 63, 65, 67).

PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS, AND SERVICE AWARDS

Eventually the Parties reached agreement on the salient terms of the Settlement and executed a term sheet which led to further negotiations which resulted in execution of a Settlement Agreement dated on or about February 17, 2024.

During these negotiations, the parties collaborated on the logistics and substance of the notice plan. (Jt. Decl. ¶ 31.) Class Counsel spent numerous hours negotiating multiple rounds of bids from well-established, experienced, and highly regarded class action administration firms. (*Id.* ¶ 31.) As a result, Plaintiffs maximized the amount that would be available for payment of claims, by minimizing notice and administration costs, while ensuring that the notice and administration plan complied with all rules, guidelines, and due process requirements. (*Id.* ¶ 31.)

### C. Preliminary Approval

On March 3, 2024, Class Counsel moved for preliminary approval of the Settlement. (Dkt. 76.) The motion included the various categories of information required to be furnished pursuant to the Northern District of California Guidance for Class Action Settlements. The Court granted that motion on June 6, 2024 (Dkt. 96).

On April 30, 2024, the Court set the hearing for Preliminary Approval for May 6, 2024 and asked counsel to address a series of questions posed by the Court in the Order (Dkt. 92). On May 6, 2024, the Court convened the hearing on Preliminary Approval at which counsel for the Parties addressed the Court's questions. On June 3, 2024, after receiving the information requested, the Court preliminarily approved the settlement and issued the schedule for notice, and for the final approval papers (Dkt. 96).

For the reasons addressed below, the value of the Settlement exceeds $20 million; there was no collusion between Plaintiffs and Defendants; and the lodestar cross-check supports granting the requested attorneys' fees and costs in full. Jt. Decl. ¶¶ 38, 57-59, 68-70. In addition, Plaintiffs adequately explain below and in the Class Representative declarations why the incentive payments for the Class Representatives are justified and appropriate, and how each of the named Plaintiffs participated in the litigation of this action.

### D. Settlement Administration

The Parties selected Angeion Group as the Claims Administrator following a highly competitive bidding process to identify the most efficient settlement administration option for the benefit of the Class Members. Jt. Decl. ¶ 45.

## III.    ARGUMENT

### A. The Court Should Approve the Application for Award of Attorneys' Fees

District courts may award attorneys' fees and costs to a prevailing plaintiff where "'the successful litigants have created a common fund for recovery or extended substantial benefit to the class.'" *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F. 935, 941 (9th Cir. 2011) (*quoting Alyeska Pipeline Serv. Co. v. Wilderness Soc.*, 421 U.S. 240, 275 (1975)). Where counsel for a class seeks fees from a common fund, courts within the Ninth Circuit have discretion to employ either the percentage-of-fund or the lodestar-multiplier method to determine whether the fee request is reasonable. *See Smith v. Pac. Pers. Servs.*, No. 17-cv-03594-SK, 2018 U.S. Dist. LEXIS 246972, at *22 (N.D. Cal. Oct. 11, 2018) (Kim, M.J.) (referencing *In re Mercury Interactive Corp.*, 618 F.3d 988, 992 (9th Cir. 2010). "Because the benefit to the class is easily quantified in common-fund settlements, we have allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar." *Id.* (quoting *Bluetooth*, 654 F.3d at 942). Regardless of the chosen method, courts must award attorneys' fees based on an evaluation of "all of the circumstances of the case." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002).

Whether applying the lodestar or percentage method, "the most critical factor is the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *see also Bluetooth*, 654 F.3d at 942 ("Foremost among these considerations . . . is the benefit obtained for the class."); Federal Judicial Center, *Manual for Complex Litigation*, § 27.71, 336 (4th ed. 2004) ("[The] fundamental focus is on the result actually achieved for class members.").

### B.    The Court Should Use the Percentage Method to Calculate Reasonable Attorneys' Fees

Under the "percentage-of-the-fund" method, the "court simply awards the attorneys a percentage of the fund sufficient to provide class counsel with a reasonable fee." *Hanlon*

*v. Chrysler Group*, 150 F.3d 1011, 1029 (9th Cir. 1998). Most courts have found the percentage approach superior in cases with a common-fund recovery because it (i) parallels the use of percentage-based contingency fee contracts; (ii) aligns the lawyers' interests with that of the class in achieving the maximum possible recovery; and (iii) reduces the burden on the court by eliminating the detailed and time-consuming lodestar analysis. *See In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1178 (9th Cir. 2013) ("[C]ourts try to . . . [tie] together the interests of class members and class counsel" by "tether[ing] the value of an attorneys' fees award to the value of the class recovery . . . [t]he more valuable the class recovery, the greater the fees award . . . [a]nd vice versa."); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1374–77 (N.D. Cal. 1989); *Vinh Nguyen v. Radient Pharm. Corp.*, No. 11-cv-00406, 2014 WL 1802293, at *9 (C.D. Cal. May 6, 2014) ("There are significant benefits to the percentage approach, including consistency with contingency fee calculations in the private market, aligning the lawyers' interests with achieving the highest award for the class members, and reducing the burden on the courts that a complex lodestar calculation requires.").

The district court may award plaintiffs' attorneys a percentage of the common fund, so long as that percentage represents a reasonable fee. *See e.g.*, *Wash. Pub. Power Supply Sys.*, 19 F.3d at 1294 n.2. Although the Ninth Circuit has set 25% of a common fund as a "benchmark" award under the percentage-of-the-fund method, courts award more than the benchmark when justified, considering factors much like those considered when determining whether a multiplier is appropriate under the lodestar approach. *Vizcaino*, 290 F.3d at 1048, 1051. "It is not unusual … for courts to award attorney's fees above this benchmark rate." *Ayala v. AT&T Mobility Servs., LLC*, No. 2:18-cv-08809-FLA (MRWx), 2024 U.S. Dist. LEXIS 48470, at *11 (C.D. Cal. Mar. 18, 2024) (collecting authority); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008) ("[I]n most common fund cases, the award exceeds that benchmark.").

The Settlement here is valued at $20 million. As such, the requested fee award of $5 million presently represents approximately 25% of the current Settlement Value. *See supra*, Section III.A.

PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS, AND
SERVICE AWARDS

Accordingly, the requested fee here will be well within the guidelines of the Ninth Circuit's 25% "benchmark" for such awards. *Vizcaino*, 290 F.3d at 1047.

As explained below, the extraordinary result presented by the Settlement, the contingent nature of representation, the risks of nonpayment, the highly complex nature of the litigation and the high caliber of lawyering required and employed by all counsel weigh in favor of a much higher percentage of the fund than that sought by Class Counsel here.

### C.     The Relevant Factors Support Class Counsel's Requested Fee Award

Class Counsel's request for an award of 25% of the common fund "is within the 'usual range'" of fee awards that the Ninth Circuit award in common fund cases, and reasonable under the factors that courts in this Circuit apply to evaluate a fee award. *Munoz v. Big Bus Tours Ltd.*, No. 18-05761, 2020 WL 13533045, at *4 (N.D. Cal. Feb. 12, 2020) (citing *Vizcaino*, 290 F.3d at 1047); *See also*, *In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d. at 1047.

### 1.    Class Counsel Achieved an Exceptional Result for the Class

"The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *Omnivision,* 559 F. Supp. 2d at 1046; *see also* Federal Judicial Center, Manual for Complex Litigation, § 27.71, p. 336 (4th ed. 2004) (the "fundamental focus is the result actually achieved for class members"). "[W]hen determining the value of a settlement, courts consider the monetary and non-monetary benefits that the settlement confers." *Miller v. Ghirardelli Chocolate Co.*, No. 12-cv-04936, 2015 WL 758094, at *5 (N.D. Cal. Feb. 20, 2015); *see also Vizcaino*, 290 F.3d at 1049 (affirming enhanced fee award where "the court found that counsel's performance generated benefits beyond the cash settlement fund"); *Linney v. Cellular Alaska P'ship*, No. C-96-3008 DLJ, 1997 WL 450064, at *7 (N.D. Cal. July 18, 1997) *aff'd*, 151 F.3d 1234 (9th Cir. 1998) (granting fee award of 1/3 of common fund where settlement provided additional non-monetary relief).

### i.    The Settlement Value Is Currently Valued at $20 Million and Is Likely to Exceed This Amount

Class Counsel's efforts generated an exceptional Settlement valued at $20 million, which includes a $15 million non-reversionary Settlement Fund, and important business practice changes

- 9 -

by Cash App as a result of this litigation to address and alleviate the alleged security deficits on its mobile application and platform, which are conservatively valued at Five Million Dollars ($5,000,000.00). Frantz Decl. ¶¶ 23-29. As further described in Plaintiffs' Motion for Preliminary Approval (Dkt. 76), the $15 million non-reversionary Settlement Fund will be used by the Settlement Administrator to pay (a) Notice and Administrative Expenses; (b) Approved Settlement Class Members' Claims; (c) any attorneys' Fee Award and Costs approved by the Court; and (e) Service Award Payments approved by the Court. Jt. Decl. ¶ 41.

### ii. The Value of Cash App's Business Practice and Security Adjustments is $5 Million

In addition to the Settlement Fund, Plaintiffs demanded and Cash App agreed to implement valuable business practice changes which will harden Cash App's existing cyber security. This relief is crucial because Plaintiffs' and Class members' PII remain in Cash App's possession.

As described above, and as further described in the attached declaration of Plaintiffs' cybersecurity expert, Mary Frantz, these business practice changes include:

1) Vulnerability Management: Defendants will maintain a program to recognize, understand, and mitigate security risks. II.F.1.

2) Infrastructure/Application Testing: Defendants will maintain a multifaceted security program including:

    a. Training to prevent common coding vulnerabilities;

    b. A Security team dedicated to Cash App's software and infrastructure;

    c. Internal vulnerability scans;

    d. An outside vendor to scan for vulnerabilities;

    e. Annual third-party penetration testing;

    f. A public bug bounty program. II.F.2.

3) Threat Intelligence: Defendants will maintain a threat intelligence team. II.F.3.

4) Third Party Attestation: Defendants will annually have conducted:

- 10 -

a. Independent third-party SOC Type II examination, regarding design and operating effectiveness of controls relevant to the Security, Availability, Processing Integrity, and Confidentiality trust service criteria;

b. Independent PCI DSS assessment covering data security requirements for protecting cardholder data processed, stored, or transmitted. II.F.4.

Many of these remedial changes were suggested by Plaintiffs cybersecurity expert, Mary Frantz, in consultation with Class Counsel, after reviewing relevant documents and information concerning security of the Cash App application. During the litigation, Plaintiffs' expert requested information from Cash App which was supplied by Defendants. Thus, Ms. Frantz had a sufficient understanding of the state of Cash App's data security practices, procedures, and shortcomings at the time the above business practice changes were developed. Ms. Frantz concluded that "the business practice changes included in the proposed Settlement Agreement address the industry standard technical and administrative deficiencies that contributed to the Cash App's data breach and if implemented would reduce the risk to consumers of Cash App's payment services platform." *See* Frantz Decl. at ¶ 4. Ms. Frantz's valuation of the security measures is well in excess of $5 million. *Id*. at ¶¶ 23-29.

### iii.    The Value Ascribed to Cash App's Remedial Measures Is Conservative

"Incidental or non-monetary benefits conferred by the litigation are relevant circumstances" in determining an appropriate award of attorneys' fees, under both the lodestar and percentage methods. *Vizcaino*, 290 F.3d at 1049 (concluding that change in employer practices and clarification of law were factors supporting fee award) (citing with approval *Bebchick v. Wash. Metro. Area Transit Comm'n*, 805 F.2d 396, 408 (D.C. Cir. 1986) ("[A]n upward adjustment to the lodestar is appropriate to reflect the benefits to the public flowing from this litigation.")); *Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003) ("[C]ourts should consider the value of the injunctive relief obtained as a 'relevant circumstance' in determining what percentage of the common fund class counsel should receive as attorneys' fees."); *In re Solara Medical Supplies Data Breach Litig.*, No. 3:19-cv-02284, ECF No. 150 (S.D. Cal., Sept. 12, 2022) (granting the plaintiffs' motion for attorney's fees in a data breach class action where the requested

- 11 -

attorney's fees were based in part on the value the remedial measures added to the settlement).

In addition, because the remedial measures bolster Cash App's global security—not just the attack vector used for the Data Breach—these remedial measures provide an enormous benefit to *all* Class Members (and any individuals for whom Cash App stores PII), regardless of whether they submit a claim for other benefits. *Id.*; *see also Troy v. Aegis Senior Cmtys. LLC*, No. 16-cv-03991-JSW, 2021 U.S. Dist. LEXIS 248899, at *11-12 (N.D. Cal. Aug. 23, 2021) (the avoided economic harm which equals the benefits received as compensatory relief could serve as the basis to value the future benefits of the injunctive relief). Here, the Class will receive approximately $15 million in relief for injuries incurred in the past. The security measures now introduced will avoid that harm prospectively and thereby save Class Members conservatively an equal amount in the future because of the elimination of the security vulnerabilities that caused that past harm.

Because "'the value to individual class members of benefits deriving from injunctive relief can be accurately ascertained,'" the amount of such relief may be included "'as part of the value of a common fund for purposes of applying the percentage method of determining fees.'" *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018 WL 3960068, at *8 (N.D. Cal. Aug. 17, 2018) (quoting *Staton*, 327 F.3d at 974); *see also In re Checking Account Overdraft Litig.*, No. 1:09- MD-02036-JLK, 2013 WL 11319243, at *13 (S.D. Fl. Aug. 2, 2013) (adding value of non-assessed overdraft fees to common fund before applying percentage method); *McCoy v. Health Net, Inc.*, 569 F. Supp. 2d 448, 478 (D.N.J. 2008) (including value of injunctive relief that benefits the class in percentage-of-recovery calculation). At a minimum, the Court should "consider the value of this nonmonetary relief as 'a "relevant circumstance" in determining what percentage of the common fund class counsel should receive as attorneys' fees, rather than as part of the fund itself.'" *Anthem*, 2018 WL 3960068, at *8.

### 2.    Class Counsel Undertook Substantial Risk in this Litigation

Risk is a critical factor in determining a fair fee award. *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1046-1047 ("The risk that further litigation might result in Plaintiffs not recovering at

all, particularly a case involving complicated legal issues, is a significant factor in the award of fees") (citing *Vizcaino*, 290 F.3d at 1048).

Defendants have steadfastly denied Plaintiffs' allegations of wrongdoing, and but for the settlement, would have vigorously defended against Plaintiffs' claims with a motion to compel arbitration, dispositive motions, and vehement opposition to class certification.

All of these considerations, and others, made continued litigation risky. Indeed, data breach cases are, by nature, especially risky and expensive. This case is no exception to that rule. It involves millions of Settlement Class Members, complicated and technical facts, a well-funded defendant, and numerous contested issues on arbitration, class certification and substantive defenses. There are numerous substantial hurdles that Plaintiffs would have had to overcome before the Court might find a trial appropriate.

Given the early stage of the litigation, the legal sufficiency of Plaintiffs' pleading was not tested by a motion to dismiss. Data breach cases, particularly, face substantial hurdles in surviving even past the pleading stage and are among the most risky and uncertain of all class action litigation. *See, e.g., Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060, 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting cases). Were litigation to proceed, there would be numerous expert reports and costly depositions, which would present significant expenses. As in any data breach class action, establishing causation and damages on a class-wide basis is largely unchartered territory and full of uncertainty.

### 3. The Settlement Required Skill and High-Quality Work

The "prosecution and management of a complex national class action requires unique legal skills and abilities" that are to be considered when determining a reasonable fee. *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1047 (citation omitted); *see also Vizcaino*, 290 F.3d at 1048 (reasoning that the complexity of the issues involved and skill and effort displayed by class counsel are among the relevant factors for determining the proper fee under the percentage approach). The relative speed with which counsel achieves a good result also illustrates the quality

of their work. "A surgeon who skillfully performs an appendectomy in seven minutes is entitled to no smaller fee than one who takes an hour; many a patient would think he is entitled to more." *Purdy v. Sec. Sav. & Loan Asso.,* 727 F. Supp. 1266, 1278-79 (E.D. Wis. 1989) (internal quotation and citation omitted) (commending counsel for settling the case within 15 months and awarding a 2.0 multiplier on lodestar). Indeed, "a prompt and efficient attorney who achieves a fair settlement without litigation serves both his client and the interests of justice." *Rates Tech., Inc. v. Speakeasy, Inc.,* 685 F.3d 163, 172 (2d Cir. 2012) (internal citations and quotations omitted).

Class Counsel are experienced litigators who have successfully prosecuted and resolved numerous large consumer class actions and other complex matters, including other data breach cases. *See* Firm Resumes of the respective Class Counsel at Exhibits 1 through 6 of the Joint Decl. Class Counsel's skill and relevant experience were critical to achieving the Settlement here. As discussed herein and in counsels' supporting declarations, investigating, prosecuting, and settling this matter required considerable commitment of time and resources by Class Counsel.

Courts also consider "the quality of opposing counsel as a measure of the skill required to litigate the case successfully." *In re American Apparel, Inc. S'holder Litig.*, No. 10-cv-06352 MMM (JCGx), 2014 WL 10212865, at *22 (C.D. Cal. 2014). Here, the caliber of opposing counsel supports the requested award, given that Plaintiffs were adverse to one of the best law firms in the country with virtually unlimited resources at their disposal. *See Vizcaino v. Microsoft Corp.*, 142 F. Supp. 2d 1299, 1303 (W.D. Wash. 2001); *see also Wing v. Asarco*, 114 F.3d 986, 989 (9th Cir. 1997) (noting the district court's evaluation of class counsel's "first-rate job").

### 4.    Class Counsel Worked on a Fully Contingent Basis

The Ninth Circuit has confirmed that a fair fee award must include consideration of the contingent nature of the fee. *See, e.g., Vizcaino*, 290 F.3d at 1050. Courts long have recognized that the public interest is served by rewarding attorneys who assume representation on a contingent basis

with an enhanced fee to compensate them for the risk that they might be paid nothing at all for their work. *See, e.g., In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994) ("Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose."); *Vizcaino*, 290 F.3d at 1051 (observing courts reward successful class counsel in contingency cases "by paying them a premium over their normal hourly rates"). This factor deserves particular weight under the unique circumstances of this matter.

If Class Counsel had been able to negotiate a fee directly with Class Members, a 25% contingent fee would have been eminently reasonable, if not low, for a case this complex, risky, and difficult. Given the prospective risks and difficulties, it would have been reasonable for Class Members to retain counsel at no cost to them unless counsel succeeded, in which case counsel would be entitled to 25% of the total of any fund recovered (after counsel's expenses). This is especially true given the willingness of Class Counsel's law firms to advance more than 2600 hours of time and $76,696.58 in costs, with no promise of recovering those funds unless the case was successful.

Class Counsel prosecuted this matter on a purely contingent basis, agreeing to advance all necessary expenses and that they would only receive a fee if there was a recovery. Jt. Decl. ¶ 15. To date, Class Counsel has received no compensation at all litigating this case on behalf of the Class. Class Counsel's "substantial outlay," and the risk that none of it would be recovered, further supports the award of their requested fees. *In re Omnivision Techs., Inc*., 559 F. Supp. 2d at 1047.

### 5.    The Requested Fee Award Is Not the Product of Collusion

First, the mediation and settlement negotiations here, as well as the ultimate product of those interactions between Plaintiffs' and Defendants' counsel were facilitated and overseen by an experienced  neutral mediator: Robert A. Meyer, Esq. of JAMS. Jt. Decl. ¶ 27. This supports the finding that the negotiations were fair and without collusion or fraud. *Swain v/ Anders Group, LLC*, 2022 WL 5250139 at *10 (E.D. Cal. Oct. 6, 2022);  *G.F. v. Contra Costa Cnty.*, No. 3:13-cv-03667, 2015 WL 4606078, *13 (N.D. Cal. July 30, 2015) ("[t]he assistance of an experienced mediator in

the settlement process confirms that the settlement is non-collusive") (quoting *Satchel1 v. Fed. Exp. Corp.*, No. 3:03-cv-02659, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007)); *In re Bluetooth*, 654 F.3d at 948 (finding that engaging in formal mediation with an experienced mediator weighs "in favor of a finding of non-collusiveness").

Second, the Settlement is non-reversionary—a factor that weighs against any indicia of collusion. Cases in the Ninth Circuit that have identified "subtle signs" of collusion include those where the defendant is set to recover some of the settlement fund through a reversionary agreement. *See*, *e.g.*, *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 610 (9th Cir. 2021) ("[W]e have identified 'reverter' or 'kicker' provisions as red flags."); *Maree v. Deutsche Lufthansa AG*, No. 8:20-cv-00885, 2022 WL 5052582, *4 (C.D. Cal. Sep. 30, 2022) (denying claims-made settlement due to the "clandestine" nature of settlement negotiations conducted without any formal discovery). However, where the settlement is non-reversionary, but a clear-sailing agreement exists, courts have found that the clear-sailing agreement is not necessarily a strong indicator of collusion. *See Lim v. Transforce, Inc.*, No. LA CV19-04390 JAK, 2022 WL 17253907, *12 (C.D. Cal. Nov. 15, 2022) (granting preliminary approval and finding no collusion where non-reversionary settlement reached under supervision of mediator); *Lusk v. Five Guys Enters. LLC,* No. 1:17-cv-00762-AWI, 2022 WL 4791923, *9 (E.D. Cal. Sep. 30, 2022) (finding no collusion based on same).

### 6.    The Requested Amount Is Comparable to Attorneys' Fees Awarded in Other Cases

In determining whether an award is reasonable, courts may look to awards made in similar cases. *See Vizcaino*, 290 F.3d at 1050 n.4. Where the percentage-of-the fund method is employed, it is well established that 25% of a common fund is a presumptively reasonable amount of attorneys' fees. *See, e.g.*, *Bluetooth*, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as a 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."). However, "in most common fund cases, the award exceeds" the 25% benchmark. *Knight v. Red Door Salons, Inc.,* No. 08-cv- 1520 SC, 2009 WL 248367, at *6 (N.D. Cal. Feb. 2, 2009).

The request here is modest both in absolute and in percentage-of-fund terms, compared with awards in other data breach cases. For instance, the fee requested here compares favorably with that awarded in *Home Depot,* where relying primarily on the lodestar method, the court approved a fee award of $7,536,497.80 after applying a 1.3 multiplier to counsel's base lodestar of $5,797,306, where the settlement featured a $13 million settlement fund, and was valued at $27 million total. *Home Depot,* 2016 WL 11299474, at *1-2 (N.D. Ga. Aug. 23, 2016) (granting fee motion); *see also id.* No. 1:14-md-02583, at Dkt. 226-1 (explaining settlement benefits in detail in motion for final approval).

The *Anthem* court applied the percentage-of-fund approach to award plaintiffs' counsel in that data breach case 27% of the settlement fund, for a total of $31.05 million. *Anthem*, 2018 WL 3960068, at *16. Similarly, the *Target* court approved a fee award of $6.75 million, which represented 29% of defendant's total payout, which included a $10 million settlement fund. *In re Target Corp. Customer Data Security Breach Litig.*, No. 14-md-02522, 2015 WL 7253765, at *3 (D. Min. Nov. 17, 2015) (affirmed on this point, *In re Target Corp. Customer Data Sec. Breach Litig.*, 892 F.3d 968, 977 (8th Cir. 2018)).

Here, Class Counsel's fee request presently represents 25% of the current conservatively estimated Settlement Value of $20 million. Accordingly, the request compares favorably to other comparable cases.

**D.    Lodestar Cross-Check Confirms the Reasonableness of the Requested Fees**

Application of the lodestar method here confirms the propriety of Class Counsel's fee request. Under the lodestar method, "the district court 'multiplies a reasonable number of hours by a reasonable hourly rate.'" *Stetson v. Grissom*, 821 F.3d 1157, 1166 (9th Cir. 2016) (quoting *Fischel v. Equitable Life Assurance Soc'y*, 307 F.3d 997, 1006 (9th Cir. 2002)). The lodestar amount may then be adjusted by a risk multiplier, and/or "a multiplier that reflects 'a host of "reasonableness" factors.'" *Stetson*, 821 F.3d at 1166 (quoting *In re Bluetooth*, 654 F.3d at 941-42).

In performing the cross-check, however, "the determination of fees should not result in a second major litigation," and "trial courts need not, and indeed should not, become green-eyeshade

accountants.  The essential goal…is to do rough justice, not to achieve auditing perfection." *Jarrell v. Amergas Propane, Inc.*, No. 16-CV-01481-JST, 2018 WL 1640055, at *4 (N.D. Cal. Apr. 5, 2018) (citations omitted).

### 1.    The Number of Hours Claimed Is Reasonable

Plaintiffs' Counsel maintained contemporaneous, detailed time records billed in 6-minute increments. The hours expended by each Plaintiffs' Counsel firm included in the present request are detailed in the accompanying Joint Declaration, based on the individual firm declarations submitted herewith, and have been reviewed in detail by Class Counsel. Jt. Decl. ¶¶ 60-63.  The total amount of hours and lodestar incurred to date are respectively 2,644.30 hours and $1,874,297.30 in lodestar

In anticipation of the filing of the fee motion, Class Counsel collectively reviewed the time submissions, audited them, and reduced hours that appeared duplicative, excessive, or unnecessary. Joint Decl. ¶ 85. 1014, 1028-29 (9th Cir. 2000), *as amended on denial of reh'g* (Nov. 2, 2000) (counsel are entitled to recover for all hours reasonably expended); *Moore v. James H. Matthews & Co.*, 682 F.2d 830, 839 (9th Cir. 1982) ("'every item of service which, at the time rendered, would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest'") (citation omitted).

As detailed above and in the attached declarations, these hours include: (1) engaging in extensive efforts to develop strategic plans, (2) extensive background investigation, (3) vetting potential class representatives, (4) self-organizing and consolidating the cases before this Court, (5) extensively researching and filing the consolidated complaint, (6) meeting and conferring with defense counsel and negotiating agreements regarding discovery, (7) undertaking substantial investigation of the Data Breach, the security vulnerabilities and the corporate structure of Defendants, (8) consulting with a highly regarded cybersecurity expert concerning the Data Breach and the security vulnerabilities of Cash App, (9) preparing extensive mediation briefing and preparing for and attending multiple private mediation sessions before Robert A. Meyers, Esq. of JAMS, (10) attending three days of mediations in 2023 on April 4, October 18, and November 15, (11) negotiating the details of the Settlement Agreement over multiple months and securing

preliminary approval of the Settlement, (12) responding to inquiries from Class Members after Class Notice was disseminated, (13) preparing the preliminary approval motion papers, addressing the concerns raised by the Court and attending the May 6, 2024 hearing for Preliminary Approval, (14) addressing inquiries raised by the multi-state Attorney General task force, (15) vetting multiple Claims Administration and working with Angeion Group to prepare and implement the Notice Plan and Claim Forms, and (16) monitoring and aiding Class Members in the claims process. Jt. Decl. ¶ 67.

Moreover, additional work will be required. Class Counsel must still: (1) prepare for and attend the final approval hearing, including the research and drafting of the reply papers and responses to objections; (2) continue to respond to the many inquiries from Class Members; (3) assist multiple Class Members in navigating through the Claims Process, including submission of required documentation where needed; (4) oversee the Settlement through final approval of distribution of the common fund; (5) oversee the claims administration process, including addressing any claim review issues; and (6) handle any appeals. *Id.* As set forth above and in the Joint Declaration, an estimate of 1,000 hours additional time results in a combined lodestar on the part of Class Counsel of $2,449,297.30. Jt. Decl. ¶ 69.

In addition, going forward, counsel will continue to advocate  for Class Members, answer their inquiries in connection with the filing of claims and submission of documents necessary to qualify;  address Class Members questions relating to deficiency letters they may receive with regard to their claims in order to assist them in qualifying;  advocate for Class Members  whose claims have been denied and who seek to have such claims reviewed in the internal review process;  and address issues of payment amounts which may be raised by Class Members who have approved claims.  Based on the substantial experience of Class Counsel in other class settlements involving submission of documentation as part of the qualifying process, Class Counsel reasonably estimate at least an additional 1,000 hours will be devoted to this action going forward by counsel and their staffs.  *See* Paragraphs 8-9, 18 of the Declaration of Gary S. Graifman in Support of Award of Attorneys' Fees and Reimbursement of Expenses ("Graifman Decl.") submitted herewith as Exhibit

1 of the Joint Decl.  In this case, 99 million (99,000,000) email notices will be sent.  Counsel has already received direct inquiries from approximately 1,000 Class Members.  The email notices will continue to roll out over the next several days.

Case law is clear - Future time incurred by counsel may be submitted and considered by the Court in determining the attorneys' fee award.  *See Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1029-30 (9th Cir.1998) (recognizing that class counsel should be entitled to payment for future work required of them).  Indeed, it is not uncommon for class counsel to request and receive the award of fees for the additional work required to enforce or ensure that class members obtain the benefits of the settlement.  *See also*, *Safier v. Western Digital Corp.,* 2006 WL 8459585, at *3 (N.D. Cal. July 6, 2006) (holding that a fee multiplier is supported "by class counsel's declaration that they have responded to a number of inquiries from class members and will continue to expend time and effort in implementing and monitoring the settlement," citing to *Hanlon, supra*); *Asghari v. Volkswagen Grp. Of Am., Inc.*, 2015 WL 12732462, at *50 (C.D. Cal. May 29, 2015) (considering in the lodestar calculus class counsel's future work in automotive defect class settlement and recognizing the "future services that class counsel must provide through the life of the latch replacement program because class counsel must remain available to enforce the contractual elements of the settlement agreement and represent any class members who encounter difficulties") (internal quotations omitted);  *Kiser v. Huge*, 517 F.2d 1237, 1255-57 (D.C. Cir. 1974, *opinion reinstated in part on rehearing  sub nom.*, *Pete v. United Mine Workers of Am. Welfare & Ret. Fund of 1950*, 517 F.2d 1275, 1256 (D.C. Cir. 1975) (noting that the District Court fee award of $3,000 for future work appeared to be too low an estimate because "despite the court-ordered efforts of the Fund and Trustees to ensure that all class members are found and enrolled, class counsel had and has a responsibility to oversee the process of finally determining the class membership."); *United Fed. of Postal Clerks, AFL-CIO v. U.S.,* 61 F.R.D. 13, 20-21 (D.D.C. 1973) (seeking to devise manner of fairly compensating class counsel for future work, which included "continuing instruction, assistance and consultation with employees' preparation of their claims" and "continuous and

PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS, AND SERVICE AWARDS

extensive correspondence with claimants concerning their legal problems regarding their claims" (see fn. 14 setting forth the future work to be engaged in.)

### 2. The Hourly Rates Are Reasonable

Plaintiffs' Counsel are entitled to the hourly rates charged by attorneys of comparable experience, reputation, and ability for similar complex federal litigation. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). Here, Plaintiffs' Counsel's hourly rates are reasonable considering their significant experience, expertise, and skill. Joint Decl. ¶ 73.

Class Counsel have brought to this case their extensive experience in data breach and consumer class actions. Joint Decl. ¶¶ 73; Exhs. 1-3, 2-3, 3-2, 4-3, 5-3, 6-3. The hourly rates of Plaintiffs' Counsel are in line with prevailing rates in this District for attorneys with comparable experience, and similar rates have been approved by other federal and state courts. Jt. Decl. ¶ 73; *see*, *e.g.*, Dkt. 631, *Brown v. Google LLC*, No. 4:20-cv-03664 (N.D. Cal. July 15, 2022) (approving rates in privacy class action up to $1,950 per hour; partner approved at $1,000 to $1,300.00 per hour, and associate rates approved at $800 per hour); *Reyes v. Experian Info. Sols., Inc.*, No. 8:16-cv-00563, (C.D. Cal.) (approving rates of $850 and $750 per hour for partners).

### 3. A Positive Multiplier Is Justified

A court may reduce or enhance the lodestar figure based on "a host of 'reasonableness' factors, 'including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment.'" *Bluetooth*, 654 F.3d at 942 (quoting *Hanlon*, 150 F.3d at 1029). ""The district court *must* apply a risk multiplier to the lodestar 'when (1) attorneys take a case with the expectation they will receive a risk enhancement if they prevail, (2) their hourly rate does not reflect that risk, and (3) there is evidence the case was risky.' Failure to apply a risk multiplier in cases that meet these criteria is an abuse of discretion." *Stetson v. Grissom*, 821 F.3d 1157, 1166 (9th Cir., 2016).

Based on these factors, as further explained below, Class Counsel submit that the requested multiplier of 2.7 is modest and more than merited given the excellent results obtained on a

PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS, AND SERVICE AWARDS

contingency basis in this complex case.[4] *See, e.g.*, *Vizcaino*, 290 F.3d at 1051 & Appendix (approving multiplier of 3.65 and citing cases with multipliers as high as 19.6); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. 3:15-md-02672, 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) ("'Multipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation.'") (quoting *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 298-99 (N.D. Cal. 1995)); *Craft v. County of San Bernardino*, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) (upholding 25% of the fund award resulting in a multiplier of approximately 5.2, and citing cases in support); *Wershba v. Apple Computer*, 91 Cal. App. 4th 224, 255 (2001) ("Multipliers can range from 2 to 4 or even higher.") (*overruled on other grounds by Hernandez v. Restoration Hardware, Inc.*, 4 Cal. 5th 260 (2018); *In re Nasdaq Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 (S.D.N.Y. 1998) ("In recent years multipliers of between 3 and 4.5 have become common") (citation omitted); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 371 (S.D.N.Y. 2002) (holding "modest" multiplier of 4.65 "fair and reasonable").

Further, the complexity of this case required experienced legal skills and high-quality work. The "prosecution and management of a complex national class action requires unique legal skills and abilities" that are to be considered when determining a reasonable fee. *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1047 (citation omitted). This case presented extraordinary challenges that required extraordinary lawyering. In general, data breach class actions present relatively unchartered territory. Further, Class Counsel represented a class consisting of approximately 85 million consumers across the nation, requiring research and potential application of the laws of each respective state. The circumstances of the breach also presented significant technical challenges and risk, requiring Class Counsel to understand the complicated security systems at issue.

Class Counsel have extensive experience litigating and serving as counsel in numerous consumer class actions, including in other data breach cases. *See* the firm resumes, Exhibit 3

---

[4] If the additional time Class Counsel estimates will be required to be expended in the future, in the amount of approximately 1,000 hours is considered, the multiplier is only 2.0. See Para. 19 of Declaration of Gary S. Grafman in Support of Application for Award of Attorneys' Fees and Reimbursement of Expenses, annexed as Exhibit 1 to Joint Decl.

annexed to each Declaration submitted by the individual law firms herein. Class Counsel devoted considerable time and effort prosecuting this case and securing the significant relief for the Class, spending more than 2,600 hours and resulting in a collective lodestar of $1,874,297.30.

The requested multiplier is further justified because this case presented a significant risk of non-payment. *Omnivision*, 559 F. Supp. 2d at 1047; *Vizcaino*, 290 F.3d at 1048. Data breach cases are especially risky, expensive, and complex because data breach law is constantly evolving and there are numerous hurdles that Plaintiffs must overcome before getting to trial, including class certification and summary judgment. Establishing a cognizable injury tied to Cash App's conduct (as opposed to, for instance, another data breach), could have presented serious challenges. *See, e.g.*, *Krottner v. Starbucks Corp.*, 406 F.App'x 129 (9th Cir. 2010) (holding that, although plaintiffs established injury-in-fact for standing purposes, they failed adequately to allege damages for purposes of their negligence claim). Were the case to proceed in litigation, there would be numerous expert reports, costly expert depositions, and *Daubert* proceedings that risk excluding Plaintiffs' expert testimony. Further, there is a dearth of class action certification decisions in the data breach context, so that class certification presents an especially heightened risk. Plaintiffs unquestionably faced an uncertain road with another pending motion to dismiss, followed by class certification, summary judgment, and any appeals.

That the considerable risks here were undertaken by Plaintiffs' Counsel on an entirely contingent basis further justifies the requested multiplier. *See Stetson*, 821 F.3d at 1166; *Vizcaino*, 290 F.3d at 1050; *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), abrogated on other grounds by *City of Burlington v. Dague*, 505 U.S. 557 (1992). "It is an established practice in the private legal market to reward attorneys for taking the risk of non- payment by paying them a premium over their normal hourly rates for wining contingency cases." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994).

Class Counsel's "substantial outlay" of time and money and the significant risk that none of it would be recovered, further supports Class Counsel's requested modest multiplier. *Omnivision*, 559 F. Supp. 2d at 1047.

**E.  Class Counsel are Entitled to Reimbursement of Litigation Costs**

Under well-settled law, Class Counsel are entitled to recover "out-of-pocket expenses that would normally be charged to a fee-paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal citation and quotation marks omitted). It is appropriate to reimburse Class Counsel for such expenses from the common fund. *See In re United Energy Corp. Solar Power Modules Tax Shelter Inv. Sec. Litig.*, No. CV-87-3962, 1989 WL 73211, at *6 (C.D. Cal. Mar. 9, 1989). In common-fund cases, the Ninth Circuit has stated that the reasonable expenses of acquiring the fund can be reimbursed to counsel who has incurred the expense. *See Vincent v. Hughes Air W., Inc*., 557 F.2d 759, 769 (9th Cir. 1977). Such expense awards comport with the notion that the district court may "spread the costs of the litigation among the recipients of the common benefit." *Wininger v. SI Mgmt. L.P.*, 301 F.3d 1115, 1121 (9th Cir. 2002).

To date, Plaintiffs' Counsel collectively incurred $76,696.58 in unreimbursed litigation costs. Jt. Decl. ¶ 80. These costs were reasonably necessary for the prosecution and resolution of this litigation (Jt. Decl.¶ 82) and were incurred by Plaintiffs' Counsel for the benefit of Class Members with no guarantee that they would be reimbursed. *See Staton,* 327 F.3d at 974 (class counsel entitled to reimbursement of expenses reasonably incurred). Plaintiffs' Counsel's litigation costs are reasonable in amount, and the Court should approve their reimbursement.

**F.  The Court Should Approve the Service Awards**

"It is well-established in this circuit that named plaintiffs in a class action are eligible for reasonable incentive payments, also known as service awards." *Viceral v. Mistras Grp., Inc.*, No. 15-cv-02198, 2017 WL 661352, at *4 (N.D. Cal. Feb. 17, 2017) (citation omitted). Service awards, which are discretionary, "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009).

The Court should grant the modest Service Awards of $2,500 each to the Class Representatives to compensate them for the effort and risk entailed in pursuing this litigation. Jt. Decl. ¶ 19. The Class Representatives have been enthusiastic and active and have fought for the best interests

of the Class. Each of the Class Representatives actively participated in the litigation by: investigating the matter prior to and after retaining their respective attorneys; participating in the plaintiff vetting process implemented by Class Counsel; reviewing and approving their original complaints and the consolidated and amended complaints; participating in discovery by providing responses to interrogatories and collecting documents and gathering evidence in response requests for production served on each of them; and corresponding and communicating with counsel to monitor the progress of the litigation and settlement. *See* Jt. Decl. ¶ 48. Each put their name and reputation on the line for the sake of the Class, and no recovery would have been possible without their critical role. *Id.*

**I.     CONCLUSION**

For all the foregoing reasons, Plaintiffs respectfully request that the Court award Five Million Dollars in attorneys' fees, $ 76,696.58 in costs, and the service awards of $2,500 to each of the Class Representatives ($7,500 in total).

Dated: August 15, 2024

*/s/ Nicholas A. Migliaccio*
Nicholas A. Migliaccio (admitted *pro hac vice*)
Jason S. Rathod (admitted *pro hac vice*)
**MIGLIACCIO & RATHOD LLP**
412 H St NE, Suite 302
Washington DC 20002
Telephone (202) 470-3520
nmigliaccio@classlawdc.com
jrathod@classlawdc.com

Melissa R. Emert (admitted *pro hac vice*)
Gary Graifman (admitted *pro hac vice*)
**KANTROWITZ, GOLDHAMER
& GRAIFMAN, P.C.**
135 Chestnut Ridge Road, Suite 200
Montvale, NJ 07645
Tel: (845) 356-2570

William B. Federman (admitted *pro hac vice*)
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave.

- 25 -

1
2

Oklahoma City, OK 73120
Ph: 405-235-1560

3
4

Daniel E. Gustafson (admitted *pro hac vice*)
David A. Goodwin (admitted *pro hac vice*)
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza

5
6

120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Tel: (612) 333-8844

7

dgustafson@gustafsongluek.com
dgoodwin@gustafsongluek.com

8
9

Scott. D Hirsch (admitted *pro hac vice*)
**SCOTT HIRSCH LAW GROUP**

10
11

6810 N. State Road 7
Coconut Creek, FL 33073
(561) 569-7062
scott@scotthirschlawgroup.com

12
13

*Attorneys for Plaintiffs*
*and the Putative Class*

14

15

16

17

## CERTIFICATE OF SERVICE

18
19
20

I hereby certify that on August 15, 2024, I caused the foregoing to be filed electronically using the Court's electronic case filing (ECF) system, which will automatically send a notice of electronic filing to the email addresses of all counsel of record.

21
22

Dated: August 15, 2024          */s/ Nicholas A. Migliaccio*
                                Nicholas A. Migliaccio

23

24

25

26

27

28

- 26 -