**FEDERMAN & SHERWOOD**
William B. Federman, *admitted pro hac vice*
10205 N. Pennsylvania Avenue
Oklahoma City, OK 73120
Tel: (405) 235-1560
wbf@federmanlaw.com

**KANTROWITZ GOLDHAMER & GRAIFMAN PC**
Gary Graifman, *admitted pro hac vice*
Melissa Emert, *admitted pro hac vice*
135 Chestnut Ridge Road, Suite 200
Montvale, NJ 07645
Tel: (845) 356-2570
ggraifman@kgglaw.com
memert@kgglaw.com

**MIGLIACCIO & RATHOD LLP**
Nicholas Migliaccio, *admitted pro hac vice*
412 H St NE #302
Washington, D.C. 20002
Tel: (202) 470-3520
nmigliaccio@classlawdc.com
jrathod@classlawdc.com

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MICHELLE SALINAS, RAYMEL WASHINGTON**, and **AMANDA GORDON**, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**BLOCK, INC.** and **CASH APP INVESTING, LLC**,<br><br>Defendants. | Case No. 3:22-cv-04823<br><br>**PLAINTIFFS' NOTICE OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Judge: Hon. Magistrate Judge Sallie Kim<br>Date: January 13, 2025<br>Time: 9:30 AM PST<br>Courtroom: C – 15th Floor |

i

## NOTICE OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

**PLEASE TAKE NOTICE THAT** on **January 13, 2025 at 9:30 AM PST**, this matter will be heard by the Honorable Magistrate Judge Sallie Kim of the United States District Court for the Northern District of California, San Francisco Division, located in Courtroom C – 15th Floor at 450 Golden Gate Avenue, San Francisco, California, 94102, pursuant to the Order Granting Revised Joint Administrative Motion to Extend Settlement Deadlines and to Reschedule Final Approval Hearing (ECF No. 117). Plaintiffs Michelle Salinas, Raymel Washington, and Amanda Gordon, (collectively, "Plaintiffs"), will, and hereby do, move the Court under Federal Rule of Civil Procedure 23 for an order: (i) finding that the proposed settlement ("Settlement") is fair, reasonable, and adequate, and granting final approval of the Settlement; (ii) finding that the form and substance of the class notice, as well as the methods of disseminating notice to the Settlement Class, constitutes reasonable and the best practicable notice; (iii) certifying the Settlement Class for settlement purposes; and (iv) directing that judgment be entered dismissing with prejudice all individual and class claims asserted in the litigation.

This Motion is supported by the following memorandum of points and authorities, the accompanying Declaration of William B. Federman ("Federman Decl.") and the exhibits thereto, all other facts the Court may or should take notice of, all files, records, and proceedings in this case, and any oral argument the Court may entertain.

Respectfully submitted,

*/s/: William B. Federman*
**FEDERMAN & SHERWOOD**
William B. Federman, admitted *pro hac vice*
10205 N. Pennsylvania Avenue
Oklahoma City, OK 73120
Tel: (405) 235-1560
wbf@federmanlaw.com

**KANTROWITZ GOLDHAMER & GRAIFMAN PC**
Gary Graifman, admitted *pro hac vice*

Melissa Emert, admitted *pro hac vice*
135 Chestnut Ridge Road, Suite 200
Montvale, NJ 07645
Tel: (845) 356-2570
ggraifman@kgglaw.com
memert@kgglaw.com

**MIGLIACCIO & RATHOD LLP**
Nicholas Migliaccio, admitted *pro hac vice*
412 H St NE #302
Washington, D.C. 20002
Tel: (202) 470-3520
nmigliaccio@classlawdc.com
jrathod@classlawdc.com

**FEDERMAN & SHERWOOD**
William B. Federman, *admitted pro hac vice*
10205 N. Pennsylvania Avenue
Oklahoma City, OK 73120
Tel: (405) 235-1560
wbf@federmanlaw.com

**KANTROWITZ GOLDHAMER &
GRAIFMAN PC**
Gary Graifman, *admitted pro hac vice*
Melissa Emert, *admitted pro hac vice*
135 Chestnut Ridge Road, Suite 200
Montvale, NJ 07645
Tel: (845) 356-2570
ggraifman@kgglaw.com
memert@kgglaw.com

**MIGLIACCIO & RATHOD LLP**
Nicholas Migliaccio, *admitted pro hac vice*
Jason Rathod, *pro hac vice forthcoming*
412 H St NE #302
Washington, D.C. 20002
Tel: (202) 470-3520
nmigliaccio@classlawdc.com
jrathod@classlawdc.com

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MICHELLE SALINAS, RAYMEL WASHINGTON**, and **AMANDA GORDON**, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**BLOCK, INC.** and **CASH APP INVESTING, LLC**,<br><br>Defendants. | Case No. 3:22-cv-04823<br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Judge: Hon. Magistrate Judge Sallie Kim<br>Date: January 13, 2025<br>Time: 9:30 AM PST<br>Courtroom: C – 15th Floor |

iv

# **TABLE OF CONTENTS**

I.      INTRODUCTION ....................................................................................... 1

II.     FACTUAL AND PROCEDURAL BACKGROUND .......................................... 2

III.    BEST PRACTICABLE NOTICE WAS ISSUED TO THE CLASS .................... 4

IV.     THE CLASS'S REACTION TO THE SETTLEMENT WAS POSITIVE........................... 7

V.      SETTLEMENT BENEFITS.................................................................... 7

        A.    Monetary Relief........................................................................ 8

              1.    Reimbursement for Out-of-Pocket Losses. ..................... 8

              2.    Reimbursement for Lost Time. ...................................... 8

              3.    Reimbursement for Transaction Losses. ......................... 8

              4.    Pro Rata Adjustment to Approved Claims. ...................... 9

        B.    Non-Monetary Benefits ............................................................ 9

VI.     FINAL APPROVAL OF THE SETTLEMENT IS MERITED ......................... 11

        A.    Legal Standard........................................................................ 11

        B.    The Settlement is Fair, Reasonable, and Adequate under the Hanlon Factors and Fed.
              R. Civ. P. 23(e). ..................................................................... 12

              1.    Fed. R. Civ. P. 23(e)(2)(A).......................................... 12

              2.    Fed. R. Civ. P. 23(e)(2)(B).......................................... 13

              3.    *Hanlon* Factors 1, 2, 3 and Fed. R. Civ. P. 23(e)(2)(C)(i).......................................... 13

              4.    *Hanlon* Factor 4, Fed. R. Civ. P. 23(e)(2)(D), and Fed. R. Civ. P. 23(e)(2)(C)(ii)... 15

              5.    *Hanlon* Factor 5........................................................ 16

              6.    *Hanlon* Factor 6........................................................ 16

              7.    *Hanlon* Factor 7........................................................ 17

              8.    Fed. R. Civ. P. 23(e)(2)(C)(iii). ................................... 17

              9.    Fed. R. Civ. P. 23(e)(2)(C)(iv). ................................... 17

              10. *Hanlon* Factor 8........................................................ 17

C.    Certification of the Settlement Class is Appropriate.................................................. 18

VII.  CONCLUSION ............................................................................................................... 18

## **TABLE OF AUTHORITIES**

**Cases**

*Botonis v. Bimbo Bakeries USA, Inc.*,

    No. 2:22-CV-01453-DJC-SCR, 2024 WL 4326916 (E.D. Cal. Sept. 27, 2024) ...................... 16

*Churchill Vill., L.L.C. v. Gen. Elec.*,

    361 F.3d 566 (9th Cir. 2004) ...................................................................... 18

*Class Plaintiffs v. City of Seattle*,

    955 F.2d 1269 (9th Cir. 1992) ...................................................................... 11

*Gaston v. FabFitFun, Inc.*,

    No. 2:20-CV-09534-RGK-E, 2021 WL 6496734 (C.D. Cal. Dec. 9, 2021) ........................... 14

*Gordon v. Chipotle Mexican Grill, Inc.*,

    No. 17-cv-01415-CMA-SKC, 2019 WL 6972701 (D. Colo. Dec. 16, 2019).......................... 14

*Hammond v. The Bank of N.Y. Mellon Corp.*,

    2010 WL 2643307 (S.D.N.Y. June 25, 2010) ........................................................ 14

*Hanlon v. Chrysler Corp.*,

    150 F.3d 1101 (9th Cir. 1998) ...................................................................... 11

*Hashemi v. Bosley, Inc.*,

    No. 21-cv-00946-PSG (RAOX), 2022 WL 2155117 (C.D. Cal. Feb. 22, 2022)...................... 13

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,

    293 F.R.D. 21 (D. Me. 2013)........................................................................ 14

*In re High-Tech Employee Antitrust Litig.*,

    No. 11-CV-02509, 2014 WL 3917126 (N.D. Cal. Aug. 8, 2014) ........................................ 11

*In re Hyundai and Kia Fuel Economy Litig.*,

    926 F.3d 539 (9th Cir. 2019) ...................................................................... 11

*In re Marriott Int'l, Inc.*,

    78 F.4th 677 (4th Cir. 2023) ...................................................................... 14

*In re Marriott International Customer Data Securities Breach Litigation*,

    341 F.R.D. 128 (D. Md. 2022) ................................................................. 14

*In re Marriott Int'l Customer Data Sec. Breach Litig.*,

    No. 19-MD-2879, 2023 WL 8247865 (D. Md. Nov. 29, 2023) ................................ 14

*In re Mego Fin. Corp*,

    213 F. 3d 454 (9th Cir. 2000) ................................................................. 11

*In re Mego Fin. Corp. Sec. Litig.*,

    213 F.3d 454 (9th Cir. 2000) ................................................................. 16

*In re Pac. Enters. Sec. Litig.*,

    47 F.3d 373 (9th Cir. 1995) ................................................................. 16

*In re Sonic Corp. Customer Data Sec. Breach Litig.*,

    No. 1:17-md-2807, 2019 WL 3773737 (N.D. Ohio Aug. 12, 2019) ........................ 14

*In re Tableware Antitrust Litig.*,

    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ...................................................... 15

*Linney v. Cellular Alaska P'ship*,

    151 F.3d 1234 (9th Cir. 1998) ................................................................. 11

*Mullane v. Cent. Hanover Bank & Tr. Co.*,

    339 U.S. 306 (1950) ........................................................................... 7

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*,

    688 F.2d 615 (9th Cir. 1982) ................................................................. 15

**<u>Rules</u>**

Fed. R. Civ. P. 23 ................................................................... passim

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

On June 3, 2024, the Court granted preliminary approval of a class action settlement between Plaintiffs and Defendants Block, Inc. and Cash App Investing, LLC (collectively, "Cash App" or "Defendants").[1] (ECF No. 96). The Settlement provides a non-reversionary Settlement Fund of $15,000,000 from which substantial and immediate benefits will be provided to the Settlement Class. This is an outstanding result for Plaintiffs and the Class that merits Final Approval.

The Settlement makes the following relief available to all Settlement Class Members: (i) reimbursement of Out-of-Pocket Losses up to $2,500; (ii) reimbursement for Lost Time at a rate of $25 per hour (a maximum of 3 hours); (iii) reimbursement for Transaction Losses; and (iv) meaningful data security enhancements to Cash App's systems. (SA, §§ II(E)–(F)).

The Parties reached this Settlement—providing meaningful benefits for the Settlement Class—after an extensive investigation, three (3) mediation sessions, and hard-fought arm's-length negotiations. Although Plaintiffs and Class Counsel believe in the merits of Plaintiffs' claims, Defendants deny each and every claim and contention alleged against it in the Action, including all allegations of wrongdoing or liability. The claims involve the intricacies of data security litigation (a fast-developing area in the law), and Plaintiffs would face considerable risks at each stage of litigation, especially class certification. Against these risks, Class Counsel and Plaintiffs believe that the Settlement achieved is for the benefit of the Settlement Class.

After this Court granted preliminary approval, the Settlement Administrator—with the help of the Parties—disseminated Notice to the Settlement Class. Individual Notice was provided to the Settlement Class Members in conjunction with a robust media program (*See* Declaration

---

[1] Unless otherwise stated, all capitalized terms shall have the definitions set forth in the Class Action Settlement Agreement and Release ("Settlement Agreement"), attached as Exhibit 1 to the Declaration of Melissa R. Emert in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF No. 76-2). Citations to the Settlement Agreement will be abbreviated as "SA, § __."

from Angeion Group, LLC Regarding Notice and Settlement Administration ("Notice Decl."), ¶¶ 7–28 (attached hereto as **Exhibit 1**)). The Settlement has been very well-received by the Settlement Class, with 667,438 claims filed. (*Id.* ¶ 29). Only 191 Class Members sought to be excluded from the Settlement, and only 2 Class Members objected to the Settlement. (*Id.* ¶¶ 31–32). The deadline to object or opt-out of the Settlement was November 18, 2024. (*Id.*). Likewise, the deadline to submit a claim was November 18, 2024. (*Id.* ¶ 29).

Plaintiffs now move the Court for final approval of the Settlement. The Settlement meets all the criteria for final approval and Plaintiffs' Motion for Final Approval of the Class Action Settlement should be GRANTED.

## II.        FACTUAL AND PROCEDURAL BACKGROUND[2]

The underlying litigation stems from two putative class action lawsuits asserting data privacy claims against Defendants. On August 23, 2022, Plaintiffs Salinas and Washington filed the first class action lawsuit against Defendants in connection with a data security incident disclosed by Defendants in or around April 2022 (the "Data Breach"). (Case No. 22-cv-04823, ECF No. 1, ¶ 1). Plaintiffs Salinas and Washington alleged that their Private Information was compromised in the Data Breach, and that Defendants failed to implement reasonable measures to safeguard their Private Information (*Id.* ¶¶ 5, 32, 48).

On November 2, 2022, Plaintiff Gordon filed a second class action lawsuit against Defendants concerning the same Data Breach, but also alleged overarching security vulnerabilities permeating the Cash App mobile application. (Case No. 22-cv-06787, ECF No. 1, ¶ 4).

After extensive conversations between Plaintiffs' Counsel, they agreed to jointly prosecute the actions to seek relief from Cash App. As a result, Plaintiffs Gordon, Salinas, and Washington, along with their counsel, filed for consolidation on December 21, 2023, and appointment of interim

---

[2] Additional information regarding the factual and procedural background of this case may be found in Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF No. 76) and Plaintiffs' Motion for Award of Attorneys' Fees, Costs, and Service Awards (ECF No. 100), as well as their accompanying exhibits.

1  lead class counsel. (ECF No. 71). The Court consolidated the actions on June 3, 2024. (ECF No.

2  95).

3         After Plaintiffs' Counsel agreed to jointly prosecute the cases, they immediately began

4  pursuing relief for the Class. Plaintiffs' Counsel retained cybersecurity expert Mary T. Frantz to

5  delve into the alleged security issues surrounding Cash App's mobile application. (Decl. of

6  William B. Federman in Support of Plaintiffs' Motion for Final Approval of Class Action

7  Settlement ("Federman Decl."), ¶ 6 (attached hereto as **Exhibit 2**)). At or around this same time,

8  Cash App indicated an interest in settlement. (*Id.*). Guided by Plaintiffs' expert, Plaintiffs

9  requested a myriad of informal discovery from Cash App, spanning months. Settlement

10  negotiations did not occur before Plaintiffs were well-informed of the strengths and weaknesses

11  of the case. (*Id.*).

12         After engaging in informal discovery with Defendants, the Parties engaged in three (3) in-

13  person mediation sessions with highly respected JAMS mediator, Robert Meyer. (*Id.* ¶ 7). The

14  Parties conducted several video conferences and telephone conferences between the mediation

15  sessions and after the mediation sessions to discuss the strengths and weaknesses of the claims

16  asserted. (*Id.*). After months of hard-fought negotiations and fulsome exchanges of documents and

17  information between the Parties, the Parties reached an agreement to settle all claims on behalf of

18  Plaintiffs and the Class. (*Id.*). This resulted in the submission of the Settlement Agreement to the

19  Court for Preliminary Approval.

20         Preliminary approval of the Settlement was granted on June 3, 2024. (ECF No. 96). The

21  Court found that the Settlement "is fair, reasonable, and within the range of reasonableness" and

22  also found, pursuant to Rule 23(e), that the prerequisites for class certification under Rules 23(a)

23  and 23(b)(3) of the Federal Rules of Civil Procedure are likely to be found to be satisfied as: (a)

24  the members of the Settlement Class are so numerous that joinder of all Settlement Class Members

25  in this Action is impracticable; (b) there are questions of law and fact that are common to the

26  Settlement Class; (c) the Plaintiffs' claims are typical of the claims of the Settlement Class; (d) the

27

interests of all Settlement Class Members are adequately represented by the Plaintiffs and Class Counsel; (e) the questions of law and fact common to Settlement Class Members predominate over any individualized questions of law and fact; and (f) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. (*Id.*). Furthermore, the Court appointed Melissa R. Emert and Gary Graifman of Kantrowitz, Goldhamer & Graifman, P.C., Nicholas A. Migliaccio and Jason S. Rathod of Migliaccio & Rathod LLP, William B. Federman of Federman & Sherwood, Daniel E. Gustafson and David A. Goodwin of Gustafson Gluek PLLC, and Scott D. Hirsch of Scott Hirsch Law Group as Class Counsel (hereinafter collectively referred to as, "Class Counsel") to act on behalf of the Class and the Class Representatives with respect to the Settlement. (*Id.*).

On August 15, 2024, Plaintiffs filed their Motion for Award of Attorneys' Fees, Costs, and Service Awards (ECF No. 100). Plaintiffs' Counsel requested an award of attorneys' fees in the amount of $5,000,000 and reimbursement of necessary litigation expenses in the amount of $76,696.58. (*Id.*). Plaintiffs' Motion for Attorneys' Fees was accompanied by a declaration from Plaintiffs' expert that attested to the value of the meaningful data security enhancements Defendants implemented to Cash App's systems, as set forth in the Settlement Agreement. (ECF No. 100-9).

### III.     BEST PRACTICABLE NOTICE WAS ISSUED TO THE CLASS

After preliminary approval of the Settlement was granted, notice of the Settlement was disseminated to the Class via direct email and a robust media program. The Court-approved notice program was effective and constituted the best notice practicable under the circumstances. Fed. R. Civ. P. 23(c)(2).

On March 13, 2024, pursuant to 28 U.S.C. § 1715, the Angeion Group, LLC ("Angeion"), on behalf of Defendants, caused notice regarding the Settlement to be sent to the Attorneys General of all U.S. states and territories, as well as the Attorney General of the United States. (Notice Decl., ¶ 6). On June 18, 2024, Angeion received from Counsel for Defendants 170 spreadsheets

containing 169,697,580 records with data for potential Class Members. (*Id.* ¶ 7). Angeion understands that, due to the nature of the action, the Parties could not identify every individual that may assert that they are a Class Member, and so the records broadly included contact information for Cash App and of these 169,697,580 records, 111,471,251 records contained an email address, 146,548,783 records contained a phone number, 118,778,539 records contained the user's name, and 169,130,830 records contained the user's CashTag ID. (*Id.*) Angeion reviewed the 169,697,580 records provided and merged records where it was evident the Cash App account belonged to the same person (i.e., records with the same exact name and email address or same exact name and phone number). The resulting merged records comprised the "Notice List" used for dissemination notice via email, with results summarized in the chart below:

| Description | Count |
|---|---|
| Initial Total Records | 169,697,580 |
| Unique Merged Records | 158,011,266 |
| Merged Records with an Email Address | 103,062,040 |
| Merged Records with a Phone Number | 136,594,902 |
| Merged Records with Name | 107,092,225 |
| Merged Records with CashTag ID | 157,466,101 |

(*Id.* ¶ 8). Prior to emailing notice of the Settlement, Angeion subjected the email addresses on the Notice List to a cleansing and verification process. (*Id.* ¶ 9). As a result of the cleansing and verification process, 99,353,030 emails were identified as valid, and 3,709,010 emails were identified as invalid. (*Id.*). Beginning on July 25, 2024, Angeion caused the Email Notice to be sent to the 99,353,030 valid email addresses on the Notice List. (*Id.* ¶ 10). Of the emails sent, 95,550,988 were delivered, and 3,802,042 were unable to be delivered due to a hard bounce. (*Id.*). Beginning on September 9, 2024, Angeion caused the Reminder Email Notice to be sent to the

95,435,405 email addresses to which the initial Email Notice had been delivered and which were not already associated with a submitted claim, exclusion request, or request to unsubscribe from receiving future email notifications. (*Id.* ¶ 11).  Of the emails sent, 91,950,349 were delivered, and 3,485,056 were unable to be delivered due to a hard bounce. (*Id.*). Beginning on October 28, 2024, Angeion caused a Supplemental Email Notice to be sent to 363,097 email addresses for individuals who had already submitted a Claim Form (*Id.* ¶ 12). Of the emails sent, 356,439 were delivered and 6,658 were unable to be delivered due to a hard bounce. (*Id.*).

Angeion also deployed a robust media notice program. The program consisted of programmatic display advertising, social media advertising, a paid search campaign and publication efforts. (*See id.* ¶¶ 13–22).  These efforts are separate and apart from, and in addition to, direct noticing, the earned media, the Settlement Website, or the toll-free hotline. (*Id.* ¶¶ 23–28).

The Notices themselves were clear and straightforward, consistent with the guidelines set forth by the Federal Judicial Center. *See* Federal Judicial Center, Illustrative Forms of Class Action Notices:  Overview,  https://www.fjc.gov/content/301253/illustrative-forms-class-action-notices-introduction (last visited September 25, 2024). The Notices provided neutral, objective, and accurate information about the nature of the Action and the Settlement, including the deadlines and means of submitting a Claim Form, objecting, and/or appearing at the Fairness Hearing personally or through counsel.  The Settlement Administrator also created and maintained the Settlement Website from which Settlement Class Members could submit claims and view important documents. (Notice Decl., ¶ 23). Furthermore, Settlement Class Members were able to call, mail, or submit an online inquiry to the Settlement Administrator in the event they had questions or needed assistance. (*Id.* ¶¶ 24–28).

Thus, Settlement Class Members received the "best notice that is practicable under the circumstances," Fed. R. Civ. P. 23(c)(2), by receiving notice that was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford

them an opportunity to present their objections," *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

## IV.    THE CLASS'S REACTION TO THE SETTLEMENT WAS POSITIVE

Overall, the Settlement has been very well-received by the Settlement Class. A total of <u>667,438</u> claims were filed (664,573 online submissions and 2,865 submissions by mail). (Notice Decl., ¶ 29). Angeion is currently evaluating these claims to determine their validity and will issue deficiency letters to any individual who submitted a deficient claim that will allow that individual a chance to remedy the deficiency before it is rejected. (*Id.*). Based upon Angeion's preliminary review, approximately 9.2% of the online claims are for Out-of-Pocket Losses, approximately 50.8% are for Lost Time, and approximately 13.0% of claims are for Transaction Losses. (*Id.*). Angeion will provide the Parties and the Court with a subsequent declaration providing an update on the status of claim review in advance of the Final Approval Hearing. (*Id.*).

Out of all the potential Settlement Class Members, only <u>191</u> Settlement Class Members sought to be excluded from the Settlement. (*Id.* ¶ 31). Additionally, only two (2) objections were received.[3] (*Id.* ¶ 32; ECF Nos. 103 and 109). The first objection (ECF No. 103) was dismissed on September 23, 2024, via a Joint Stipulation (*See* ECF Nos. 106, 123). Thus, this objection was resolved. (ECF No. 123).

Class Counsel responded in opposition to the second objection (ECF No. 109) on November 6, 2024 (ECF No. 116). The second objector, Jerome Clarke, is not a Class Member and does not have standing to object to the Settlement. (*Id.*). The deadline to object or opt-out of the Settlement was November 18, 2024. (Notice Decl., ¶¶ 31–32).

## V.    SETTLEMENT BENEFITS[4]

The Settlement provides meaningful equitable and monetary relief to Settlement Class

---

[3] Note, five (5) individuals (who may or may not be Settlement Class Members) made miscellaneous filings on the docket that did not comply with the objection procedures. (*See* ECF Nos. 101, 105, 108, 111, and 114).

[4] Additional information regarding the settlement benefits may be found in Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF No. 76) and Plaintiffs' Motion

Members. A non-reversionary cash Settlement Fund of $15,000,000 will be used to pay (i) Notice and Administrative Expenses; (ii) Taxes and Tax-Related Expenses; (iii) Fee Award and Costs approved by the Court; (iv) Service Award Payments approved by the Court; and (v) Approved Claims. (SA, § II(E)(2)).

### A. Monetary Relief

#### 1. Reimbursement for Out-of-Pocket Losses.

All Settlement Class Members may submit a claim for reimbursement of Out-of-Pocket Losses up to $2,500.00. (*Id.* § II (E)(4)(a)). To receive reimbursement for Out-of-Pocket Losses, Settlement Class Members need only submit a valid Claim Form that includes the following: (i) third-party documentation supporting the loss; and (ii) a brief description of the nature of the loss, if the nature of the loss is not apparent from the documentation alone. (*Id.*). Third-party documentation can include receipts or other documentation not "self-prepared" by the Settlement Class Member that documents the costs incurred. (*Id.*). Self-prepared documents such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but can be considered to add clarity or support other submitted documentation. (*Id.*).

#### 2. Reimbursement for Lost Time.

All Settlement Class Members may submit a claim for reimbursement of Lost Time up to three (3) hours at a rate of $25.00 per hour. (*Id.* § II (E)(4)(c)).

#### 3. Reimbursement for Transaction Losses.

All Settlement Class Members may also submit a claim for reimbursement for Transaction Losses. (*Id.* § II (E)(4)(e)). To receive reimbursement for a Transaction Loss, a Settlement Class Member must submit a valid Claim Form that attests that the Settlement Class Member experienced an Unauthorized Account Event (as defined in Paragraph II.A.23 of the Settlement Agreement) during the period of four (4) years prior to the filing of the *Salinas* Complaint (which was filed on August 23, 2022) through the Notice Date. (*Id.*). Settlement Class Members must

---

for Award of Attorneys' Fees, Costs, and Service Awards (ECF No. 100), as well as their accompanying exhibits.

also provide at least <u>one</u> of the following three items:

i.    A copy of the notification the Settlement Class Member transmitted to Defendants during the same period, notifying Defendants of the Unauthorized Account Event which verifies the account name ($Cashtag) and the amount of the loss;

ii.    A copy of the police report concerning the Unauthorized Account Event which verifies the amount of the loss made during the same period; or

iii.    Documentation that the Settlement Administrator, in its sole discretion, determines suffices to demonstrate the occurrence of an Unauthorized Account Event during the period which caused the monetary loss claimed. (*Id.*).

### 4.  Pro Rata Adjustment to Approved Claims.

In the event that the Net Settlement Fund is not sufficient to make payment for all Approved Claims at the full amounts otherwise approved, then the value of the payments for the Approved Claims will be reduced on a pro rata basis, such that the aggregate value of all payments for Approved Claims does not exceed the Net Settlement Fund. (*Id.* § II (E)(6)). Alternatively, if the aggregate value of all Approved Claims is less than the Net Settlement Fund, each Settlement Class Member that submitted an Approved Claim shall receive a proportional share of the amount of the Net Settlement Fund that exceeds the aggregate value of all Approved Claims based on the percentage the Settlement Class Members' Approved Claim as compared to the aggregate value of all Approved Claims. (*Id.* § II (E)(7)).

### B.  Non-Monetary Benefits

The Settlement also provides for non-monetary benefits in the form of security measures implemented by Defendants. (*Id.* § II (F)). Defendants represent that they have implemented the following security measures, which will benefit all Class Members, whether or not they submit a claim:

(a)    **Vulnerability Management.**  Defendants now maintain a program to recognize, understand, and mitigate the security risks associated with known vulnerabilities. This program

includes operational and business metrics to monitor overall program health and analytics to facilitate trend identification. (*Id.*).

      (b)     **Infrastructure/Application Testing.** Defendants now maintain a multifaceted security program to test their systems and software, including:

          i.     Training to prevent common coding vulnerabilities in software development processes by training developers annually in secure coding techniques and developing applications based on secure coding guidelines;

          ii.     Security team dedicated to Cash App and Cash App Investing software and infrastructure;

          iii.     Internal network vulnerability scans of Cash App's cloud environment on a daily basis to identify and remediate vulnerabilities according to their vulnerability management process;

          iv.     PCI Approved Scanning Vendor (PCI ASV) to perform external vulnerability scans of Cash App's PCI DSS environment on a weekly basis to remediate vulnerabilities identified according to the vulnerability management process;

          v.     Annual independent third-party penetration testing of Cash App's PCI DSS environment; and

          vi.     A public bug bounty program. (*Id.*).

      (c)     **Threat Intelligence.** Defendants now maintain a threat intelligence team responsible for developing pre-breach/preventative intelligence on threats and vulnerabilities. (*Id.*).

      (d)     **Third Party Attestation.** Defendants shall annually conduct:

          i.     Independent third-party SOC 2 Type II examination, regarding design and operating effectiveness of controls relevant to the Security, Availability, Processing Integrity, and Confidentiality trust service criteria;

ii.    Independent annual PCI DSS assessment covering data security requirements for protecting cardholder data processed, stored, or transmitted. (*Id.*).

## VI.    FINAL APPROVAL OF THE SETTLEMENT IS MERITED

### A.  Legal Standard.

The Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Hyundai and Kia Fuel Economy Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (citations omitted); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1269, 1276 (9th Cir. 1992); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998). "The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "Rule 23(e)… require[s] a two-step process for the approval of class action settlements: the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." *In re High-Tech Employee Antitrust Litig.*, No. 11-CV-02509, 2014 WL 3917126, at *13 (N.D. Cal. Aug. 8, 2014) (internal quotations and citations omitted). The Settlement has now reached the second step of the process—final approval.

A decision "to approve or reject a settlement is committed to the sound discretion of the trial judge because [s]he is exposed to the litigants, and their strategies, positions, and proof." *In re Mego Fin. Corp*, 213 F. 3d 454, 458 (9th Cir. 2000). Rule 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1101, 1026 (9th Cir. 1998) ("*Hanlon*"). Under Ninth Circuit precedent, the district court must evaluate the settlement under the following factors:

> (1) the strength of the Plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

11

*Id.* Additionally, Federal Rule of Civil Procedure 23(e)(2) requires the district court to also consider the following factors:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

This Court made a preliminary finding on June 3, 2024 (ECF No. 96), that the Settlement met the requirements above. Now, the Court should find that these pre-requisites have been finally satisfied for the reasons set forth below.

**B. The Settlement is Fair, Reasonable, and Adequate under the *Hanlon* Factors and Fed. R. Civ. P. 23(e).**

**1. Fed. R. Civ. P. 23(e)(2)(A).**

This Court previously considered Class Counsels' qualifications when preliminarily approving the Settlement. (*See* ECF No. 96). There, the Court found that Class Counsel were experienced and qualified to oversee the litigation. (*Id.*). The same still holds true at the final approval stage.

Class Counsel has extensive experience litigating complex class actions and has demonstrated ample success in litigating data security breach class actions. (*See* ECF Nos. 76-6, 76-7, 76-8). Class Counsel have adequately represented the Class by fully investigating the facts and legal claims; preparing the complaints; requesting, obtaining, and reviewing numerous documents from Defendants regarding data security incidents, affected class members, its remediation efforts, insurance coverage, and financial condition; drafting comprehensive

mediation statements assessing the legal and factual strengths and weaknesses of the case; and participating in three (3) mediations and a lengthy negotiation process. (Federman Decl., ¶ 11). The extensive work done by Class Counsel to date provided Class Counsel with sufficient information to negotiate this very favorable Settlement for the Class. (*Id*.).

The Settlement Class Representatives have also demonstrated their adequacy by: (i) selecting well-qualified Class Counsel; (ii) producing information and documents to Class Counsel to permit investigation and development of the complaints; (iii) being available as needed throughout the litigation; and (iv) monitoring the Litigation. (*Id*. ¶ 12). Their claims and interests align with those of the Settlement Class, and they approve of the Settlement. (*Id*.). Thus, this factor militates in favor of granting final approval.

### 2. Fed. R. Civ. P. 23(e)(2)(B).

The Settlement was negotiated at arm's length, without collusion, and with the assistance of a highly qualified and respected mediator, Robert Meyer. (Federman Decl., ¶¶ 7–8 ). Over the span of three (3) mediation sessions the Parties exchanged and provided the mediator with detailed mediation statements outlining the strengths and weaknesses of their claims and defenses and exchanged informal discovery. (*Id*.). The fact that the Settlement was achieved through well-informed, and arm's-length neutrally supervised negotiations weighs in favor of granting final approval.

### 3. *Hanlon* Factors 1, 2, 3 and Fed. R. Civ. P. 23(e)(2)(C)(i).

The value achieved through the Settlement Agreement is guaranteed, whereas the chances of prevailing on the merits are uncertain—especially where serious questions of law and fact exist, which is common in data breach litigation. Although all class actions involve a high level of risk, expense, and complexity, data breach litigation is especially risky and complex. *See Hashemi v. Bosley, Inc.*, No. 21-cv-00946-PSG (RAOX), 2022 WL 2155117, at *7 (C.D. Cal. Feb. 22, 2022) ("[D]ata breach class actions are a relatively new type of litigation and that damages methodologies in data breach cases are largely untested and have yet to be presented to a jury."); *Gaston v.*

*FabFitFun, Inc.*, No. 2:20-CV-09534-RGK-E, 2021 WL 6496734, at *3 (C.D. Cal. Dec. 9, 2021) ("Historically, data breach cases have experienced minimal success in moving for class certification."); *Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases such as the instant case are particularly risky, expensive, and complex."); *In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-2807, 2019 WL 3773737, at *7 (N.D. Ohio Aug. 12, 2019) ("Data breach litigation is complex and risky.").  The present action, moreover, is more complicated than most data breach litigations because it also involves allegations of security vulnerabilities permeating the Cash App mobile application generally and allegations regarding Defendants' responses to consumer complaints.

While Plaintiffs strongly believe in the merits of their case, they also understand that should litigation continue Defendants would likely assert several potentially case-dispositive defenses. (Federman Decl., ¶ 10). Due at least in part to their cutting-edge nature and the rapidly evolving law, data breach cases like this one generally face substantial hurdles—even just to make it past the pleading stage. *See Hammond v. The Bank of N.Y. Mellon Corp.*, 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). Class certification is another hurdle that would have to be met—and one that has been denied in other data breach cases. *See, e.g., In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013).  Getting a class certified—and then maintaining certification—is not assured. *In re Marriott International Customer Data Securities Breach Litigation*, 341 F.R.D. 128 (D. Md. 2022), was recently decertified on appeal. *See In re Marriott Int'l, Inc.*, 78 F.4th 677, 680 (4th Cir. 2023).[5]  The *Marriott* case has now been pending since 2019, providing a stark example about how long these data breach cases can drag on. And no data breach class action—in any jurisdiction—has gone to trial and achieved a plaintiffs' verdict. In

---

[5] To complete the story, the classes were re-certified by the district court on remand. *See In re Marriott Int'l Customer Data Sec. Breach Litig.*, No. 19-MD-2879, 2023 WL 8247865, at *1 (D. Md. Nov. 29, 2023).

1    addition, Defendants have represented that they would file a motion to compel arbitration.

2    Plaintiffs dispute the defenses Defendants could assert—but it is obvious that their success at trial

3    (and a possible appeal) is far from certain. (Federman Decl., ¶ 10). Through the Settlement,

4    Plaintiffs and Class Members gain significant benefits without having to face further risk—such

5    as not receiving any relief at all. Therefore, these factors also support final approval of the

6    Settlement.

7        **4.   *Hanlon* Factor 4, Fed. R. Civ. P. 23(e)(2)(D), and Fed. R. Civ. P.**

8        **23(e)(2)(C)(ii).**

9        To evaluate the adequacy of the settlement amount, "courts primarily consider plaintiffs'

10    expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust*

11    *Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007). But "a cash settlement amounting to only a

12    fraction of the potential recovery will not per se render the settlement inadequate or

13    unfair." *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615,

14    628 (9th Cir. 1982).

15        The Settlement guarantees Class Members real relief and value for their harms as well as

16    protections from future data security incidents. (*See* Section V, *supra*). As explained above, Class

17    Members are eligible to make a claim for Out-of-Pocket Losses, Lost Time, and/or Transaction

18    Losses from a $15,000,000 Settlement Fund. (SA, § II (E)). The task of validating those claims

19    will be delegated to the Settlement Administrator, a neutral party which has significant experience

20    processing these claims in similar cases. (*Id.* § II(I)). Thus, the only difference in treatment among

21    Class Members is that those who incurred and submit claims for Out-of-Pocket Losses, Lost

22    Time, and Transaction Losses will—appropriately and equitably—receive payments in

23    proportion to the amount of their losses. The claims period was sufficiently long to enable all

24    eligible Class Members to collect any necessary information before submitting their claims.

25    Therefore, in the light of the exceptional relief provided and the uncertainties described in the

26    preceding sections, these factors also weigh in favor of final approval of the Settlement.

27

1

2

3        **5.    *Hanlon* Factor 5.**

4        Although the Settlement was achieved before discovery commenced, this does not hinder

the Court from granting final approval of the Settlement. *See In re Mego Fin. Corp. Sec. Litig.*,

213 F.3d 454, 459 (9th Cir. 2000), *as amended* (June 19, 2000) ("In the context of class action

settlements, formal discovery is not a necessary ticket to the bargaining table where the parties

have sufficient information to make an informed decision about settlement.") (quotation marks

and citation omitted); *Botonis v. Bimbo Bakeries USA, Inc.*, No. 2:22-CV-01453-DJC-SCR, 2024

WL 4326916, at *7 (E.D. Cal. Sept. 27, 2024) (approving settlement where "extensive informal

discovery" was conducted). The Parties reached this Settlement—providing meaningful benefits

for the Settlement Class—after extensive investigation and tense arm's-length negotiations.

(Federman Decl., ¶¶ 8–9). Settlement negotiations did not occur before Plaintiffs were well

informed of the strengths and weaknesses of their case. (*Id.*). Before settlement negotiations,

Plaintiffs sought and obtained informal discovery from Defendants on a number of topics,

including Defendants' data security posture, remedial actions taken by Defendants, complaints

received from Class Members, and data security incidents experienced by Defendants.  (*Id.* ¶ 8).

        The information received allowed Class Counsel,  who are experienced in data breach class

actions, to conduct settlement negotiations with a thorough understanding of the strengths and

weaknesses of Plaintiffs' claims. (*Id.* ¶ 9). Equipped with this knowledge, and their significant

experience litigating and resolving similar actions, Class Counsel negotiated what they believe to

be a fair, adequate, and reasonable settlement worthy of final approval. (*Id.*)

        **6.    *Hanlon* Factor 6.**

        The judgment of Class Counsel also supports the finding that the Settlement is fair and

reasonable. *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) ("Parties represented

by competent counsel are better positioned than courts to produce a settlement that fairly reflects

each party's expected outcome in litigation.") The benefits available here compare favorably to

what Class Members could recover if successful at trial and provide meaningful benefits to the

16

Class in light of the uncertainties presented by continued litigation, trial, and appeals. (*Id.* ¶ 10). In the experience of Class Counsel, who has litigated numerous data breach cases, spoken to victims of other data privacy incidents, and has reviewed claims data from other data privacy settlements, the relief provided by this Settlement is an outstanding result for the Class. (*Id.* ¶¶ 13–15).

### 7.  *Hanlon* Factor 7.

This factor is inapplicable. There were no government participants in this action.

### 8.  Fed. R. Civ. P. 23(e)(2)(C)(iii).

As compensation for the substantial benefits conferred upon the Settlement Class, Class Counsel filed a Motion for Award of Attorneys' Fees, Costs, and Service Awards (ECF No. 100), requesting an award of attorneys' fees in the amount of $5,000,000.00, reimbursement of necessary litigation expenses in the amount of $76,696.58, and Service Awards of $2,500.00 to each of the Class Representatives ($7,500.00 in total). (*Id.*). These requests are contemplated by the Settlement Agreement and Class Counsel apprised the Court of these requests in their Motion for Preliminary Approval. This was also clearly delineated in the notice materials sent to the Settlement Class. Class Counsel provided a total package of relief estimated to be worth over $20,000,000.[6] As such, Class Counsel's attorneys' fees request only amount to approximately 25% of the total settlement value.

### 9.  Fed. R. Civ. P. 23(e)(2)(C)(iv).

There are no agreements required to be identified under Federal Rule of Civil Procedure 23(e)(2)(C)(iv) other than the Settlement Agreement and the agreement with the Settlement Administrator to effectuate the notice program and the claims administration process.

### 10. *Hanlon* Factor 8.

---

[6] Calculated by adding the $15,000,000 Settlement Fund to the estimated very conservative amount of over $5,000,000 in data security enhancements implemented by Cash App. Plaintiffs' expert Mary T. Franz estimates that data security enhancements can be at least worth $25,000,000. (ECF No. 100-9).

The reaction to the Settlement has been very positive. A total of <u>667,438</u> claims were filed. (Notice Decl., ¶ 29). Out of all the potential Settlement Class Members, only <u>191</u> Settlement Class Members sought to be excluded from the Settlement. (*Id.* ¶ 31). Additionally, only two (2) objections were received. (*Id.* ¶ 32; ECF Nos. 103 and 109). The Class's overwhelming approval of the Settlement confirms final approval is warranted. *See e.g.*, *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (holding that approval of a settlement that received 45 objections and 500 opt-outs out of 90,000 class members was proper).

### C. Certification of the Settlement Class is Appropriate.

Under the terms of the Settlement Agreement, the Parties agreed, for Settlement purposes only, to the certification of the Settlement Class, defined as follows:

> All persons who are current or former customers of Defendants or any of Defendants' affiliates, parents, or subsidiaries and who had their Personal Information, Cash App account, or Cash App Investing account accessed or obtained without their authorization or who otherwise had unauthorized, unintended, or fraudulent withdrawals or transfers to or from, or alleged error in connection with, a Cash App or Cash App Investing account or any linked financial account in the period of four (4) years prior to the filing of the Salinas Complaint (which was filed on August 23, 2022) through the Notice Date.

SA, § II(B). In the Preliminary Approval Order, the Court preliminarily certified the Settlement Class. (ECF No. 96). Nothing has changed since then, and thus Plaintiffs respectfully request that the Court finally certify the Settlement Class for Settlement purposes.

### VII.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court enter the proposed Final Approval Order submitted herewith.

Dated: December 9, 2024                           Respectfully submitted,

                                                  */s/: William B. Federman*
                                                  **FEDERMAN & SHERWOOD**
                                                  William B. Federman, admitted *pro hac vice*
                                                  10205 N. Pennsylvania Avenue
                                                  Oklahoma City, OK 73120
                                                  Tel: (405) 235-1560
                                                  wbf@federmanlaw.com

**KANTROWITZ GOLDHAMER & GRAIFMAN PC**
Gary Graifman, admitted *pro hac vice*
Melissa Emert, admitted *pro hac vice*
135 Chestnut Ridge Road, Suite 200
Montvale, NJ 07645
Tel: (845) 356-2570
ggraifman@kgglaw.com
memert@kgglaw.com

**MIGLIACCIO & RATHOD LLP**
Nicholas Migliaccio, admitted *pro hac vice*
412 H St NE #302
Washington, D.C. 20002
Tel: (202) 470-3520
nmigliaccio@classlawdc.com
jrathod@classlawdc.com

19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

## CERTIFICATE OF SERVICE

I hereby certify that on December 9, 2024, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing document will be served upon interested counsel via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ *William B. Federman*
William B. Federman